Sublizio GERMANIO and Hilda
Germanio, Plaintiffs,

v.

The GOODYEAR TIRE & RUBBER
COMPANY, Defendant.

Civ. A. No. 87–3857(JFG).

United States District Court,
D. New Jersey.

March 26, 1990.

Stephen A. Browndorf, Northfield, N.J., and John C. Risjord and Randy W. James, John C. Risjord & Associates, P.C., Overland Park, Kan., for plaintiffs.

Thomas T. Chappell, DeGonge & Chappell, Belleville, N.J., and Christopher S. Shank and William D. Beil, Stinson, Mag & Fizzell, Kansas City, Mo., for defendant.

GERRY, Chief Judge.

I. Introduction

Presently before the court is defendant Goodyear Tire and Rubber Company's pretrial motion for summary judgment on the claim for punitive damages advanced by plaintiffs, Sublizio and Hilda Germanio, in this products liability action concerning the explosive separation of a truck tire rim manufactured by defendant. Defendant argues that New Jersey's scheme for the determination of the propriety of an award of punitive damages by the jury violates the U.S. Constitution. The specific provisions which defendant argues are being violated are the Fourteenth Amendment's guarantee of due process and equal protection of the law. Defendant also raises the New Jersey Constitution's proscription of excessive fines. N.J. Const. Art. I, Sec. 12. Defendant has adduced a number of arguments in favor of its position, and we will treat each in turn.

At the outset, it is useful to examine the standards by which the question of punitive damages is decided in New Jersey. The New Jersey Products Liability Act of 1987 provides, in pertinent part:

a. Punitive damages may be awarded to the claimant only if the claimant proves, by a preponderance of the evidence, that the harm suffered was the result of the product manufacturer's or seller's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of the safety of product users, consumers, or others who foreseeably might be harmed by the product. For the purposes of this section "actual malice" means an intentional wrongdoing in the sense of an evil-minded act, and "wanton and willful disregard" means a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission. Punitive damages shall not be awarded in the absence of an award of compensatory damages.

b. The trier of fact shall first determine whether compensatory damages are to be awarded. Evidence relevant only to punitive damages shall not be admissible in that proceeding. After such determination has been made, the trier of fact shall, in a separate proceeding, determine whether punitive damages are to be awarded. In determining whether punitive damages are to be awarded, the trier of fact shall consider all relevant evidence, including but not limited to, the following:

(1) The likelihood at the relevant time that serious harm would arise from the tortfeasor's conduct;

(2) The tortfeasor's awareness of reckless disregard of the likelihood that the serious harm at issue would arise from the tortfeasor's conduct;

(3) The conduct of the tortfeasor upon learning that its initial conduct would likely cause harm; and

(4) The duration of the conduct or any concealment of it by the tortfeasor.

. . . .

d. If the trier of fact determines that punitive damages should be awarded, the trier of fact shall then determine the amount of these damages. In making that determination, the trier of fact shall

consider all relevant evidence, including, but not limited to, the following:

(1) All relevant evidence relating to the factors set forth in subsection b. of this section;

(2) The profitability of the misconduct of the tortfeasor;

(3) When the misconduct was terminated; and

(4) The financial condition of the tortfeasor.

N.J.S.A. 2A:58C–5(a), (b), (d).

■ We also note at the outset that defendant has attacked the constitutionality of the entire "New Jersey punitive damages regime." (Defendant's brief, p. 3, n. 2.) However, defendant lacks standing to challenge N.J.S.A. 2A:58C–5(c), which concerns the applicability of punitive damages to products subject to premarket approval by the federal Food and Drug Administration. We therefore will consider that provision to be severed from the challenge to the remainder of the statute, and we do not pass on its constitutionality.

Defendant states that "[p]unitive damages in New Jersey are rooted in the common law. Although a statute now exists to regulate punitive damages in certain instances, the New Jersey punitive damages regime remains the product of the common law." (Defendant's brief, p. 3, n. 2.) (Citations omitted.) However, the punitive damages provision of the Product Liability Act directly applies to the present case. The Act specifically excludes environmental torts from its purview. Beyond that, its provisions, including those concerning punitive damages apply to any "product liability action," which is defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of express warranty." N.J.S.A. 2A:58C–1(b)(3). The statute took effect on July 22, 1987. The complaint in this matter was filed on September 22, 1987. Defendant's assertion that this court's analysis of a constitutional challenge to New Jersey's punitive damages law in a products liability case must rely solely on New Jersey case law may have been true before July 22, 1987, but is true no longer. "[T]he court must decide according to existing laws." *United States v. Peggy Schooner,* 1 Cranch 103, 110, 2 L.Ed. 49 (1801). We therefore must concentrate our attention on the punitive damages statute, although we will consider pre–1987 case law as supplementary guidance to the intent of the New Jersey legislature, *see* N.J.S.A. 2A:58C–1, Senate Judiciary Committee Statement, Senate, No. 2805–L.1987, c. 197 (*citing Fischer v. Johns–Manville Corp.,* 103 N.J. 643, 512 A.2d 466 (1986); *Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 N.J. 37, 477 A.2d 1224 (1984); *Berg v. Reaction Motors Div.,* 37 N.J. 396, 181 A.2d 487 (1962); *Enright v. LuBow,* 202 N.J.Super. 58, 493 A.2d 1288 (App.Div.1985), *cert. denied,* 104 N.J. 376, 517 A.2d 386 (1986), as sources of the statutory punitive damages standards and for guidance on questions where the legislature is mute.

We do not write on a wholly blank slate. Two other judges in our District have had occasion to examine the constitutionality of punitive damages in New Jersey and have upheld the state law. *Juzwin v. Amtorg Trading Corp.,* 718 F.Supp. 1233 (D.N.J. 1989); *Leonen v. Johns–Manville Corp.,* 717 F.Supp. 272 (D.N.J.1989). In both of these cases, the question of the constitutionality of punitive damages hinged on the much debated issue of whether the availability of such damages in mass tort litigation violated the due process clause. The *Leonen* court also considered equal protection and vagueness challenges to New Jersey punitive damages law and found them wanting. 717 F.Supp. at 278–81. These issues are before us today, but defendant also propounds a number of other theories of constitutional attack, and on those issues we plow new ground.

## II. Punitive Damages and the "Standardless Discretion of Juries"

Defendant's first challenge to punitive damages alleges a facial violation of due process caused by the standardless discretion of civil juries under New Jersey law. This argument is prompted by concurring

language in two recent Supreme Court decisions. In *Browning–Ferris Industries v. Kelco Disposal, Inc.,* —— U.S. ——, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), the court rejected a challenge to an award of punitive damages brought under the excessive fines clause of the Eighth Amendment. *Id.,* 109 S.Ct. at 2910. In a concurring opinion, Justice Brennan, joined by Justice Marshall, indicated that the due process clause may limit awards of punitive damages that are imposed by juries that are given only "skeletal guidance" by the trial court. *Id.,* 109 S.Ct. at 2923 (Brennan, J., concurring). Justice O'Connor, joined by Justice Stevens, dissented from the Eighth Amendment holding but agreed with the majority that no issue of due process had been raised. Justice O'Connor agreed with Justice Brennan concerning "the vagueness and procedural due process problems presented by juries given unbridled discretion to impose punitive damages." *Id.,* 109 S.Ct. at 2924 (O'Connor, J., concurring in part and dissenting in part). Justice O'Connor's opinion in *Browning–Ferris* echoed her earlier opinion in *Banker's Life & Casualty Co. v. Crenshaw,* 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988). In that case, the Court refused to pass on the question of the constitutionality of punitive damages because the question was not properly raised below. *Id.* at 80, 108 S.Ct. at 1651. In a separate opinion, Justice O'Connor, joined by Justice Scalia, opined that "Mississippi law gives juries discretion to award any amount of punitive damages in any tort case in which a defendant acts with a certain mental state. In my view, because of the punitive character of such awards, there is reason to think that this may violate the Due Process Clause." *Id.* at 87, 108 S.Ct. at 1655 (O'Connor, J., concurring in part and concurring in the judgment).

Defendant takes these opinions to show that "five of the nine Justices expressed grave doubt about the constitutionality under the Due Process Clause of current punitive damages law." (Defendant's brief, p. 2.) But we think that they can only be taken as evidence that an unreasonably generous award of punitive damages may be attacked under the Due Process Clause, which is hardly news. *St. Louis, I.Mt. & So. Ry. Co. v. Williams,* 251 U.S. 63, 66–67, 40 S.Ct. 71, 73, 64 L.Ed. 139 (1919) (due process forbids damages which are "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable"); *Waters–Pierce Oil Co. v. Texas,* 212 U.S. 86, 111–12, 29 S.Ct. 220, 227, 53 L.Ed. 417 (1909) (due process forbids damages which are "grossly excessive"). *See also Southwestern Telegraph & Telephone Co. v. Danaher,* 238 U.S. 482, 491, 35 S.Ct. 886, 888, 59 L.Ed. 1419 (1915); *Missouri Pacific Ry. Co. v. Humes,* 115 U.S. 512, 522–23, 6 S.Ct. 110, 113–14, 29 L.Ed. 463 (1885). To argue that such an attack should be successful based on dicta, albeit Supreme Court dicta, is speculation. Despite defendant's point that these opinions indicate that certain members of the Court regard the due process issue as one crying for recognition, the Court has denied three petitions for certiorari which sought to raise this very issue. *Metromedia, Inc. v. April Enterprises, Inc.,* —— U.S. ——, 109 S.Ct. 3242, 106 L.Ed.2d 589 (1989); *Goodyear Tire & Rubber Co. v. Hodder,* 426 N.W.2d 826 (Minn.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989); *Miller v. Cudahy Co.,* 858 F.2d 1449 (10th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). We draw no conclusions from this but mention it merely to illustrate the hazards of high court head-counting. This court is bound by precedents, not concurrences, dicta, or the prognostications of erstwhile "court watchers."

Defendant contends that New Jersey's punitive damages scheme violates the due process clause's requirement of fundamental fairness: "The touchstone of due process is protection of the individual against arbitrary action of government." *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986), *quoting Dent v. West Virginia,* 129 U.S. 114, 123, 9 S.Ct. 231, 233–34, 32 L.Ed. 623 (1889). Defendant's argument takes two avenues. First, defendant argues that the New Jersey standards for determining the question

of punitive damages are unconstitutionally vague.

## A. Void–For–Vagueness

Judge Fisher of our District recently undertook a comprehensive review of New Jersey's punitive damages law under the void-for-vagueness doctrine and found it adequate. *Leonen*, 717 F.Supp. at 278–81. Although that case arose prior to the codification of New Jersey punitive damages law in 1987, we find its analysis persuasive. Judge Fisher noted that the purpose of the void-for-vagueness doctrine is "to ensure that those regulated by the law have proper notice of what is and isn't forbidden; to provide adequate standards for those who enforce the laws; and to protect basic first-amendment freedoms." *Id.* at 279, *citing Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). Accordingly, "a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Giaccio v. Pennsylvania,* 382 U.S. 399, 402–03, 86 S.Ct. 518, 521, 15 L.Ed.2d 447 (1966).

Under New Jersey law it has long been unequivocal that punitive damages may be awarded only where the defendant's conduct was "actuated by actual malice or accompanied by a wanton and willful disregard of the safety of product users, consumers, and others who foreseeably might be harmed by the product." N.J.S.A. 2A:58C–5; *see also Fischer v. Johns–Manville Corp.,* 103 N.J. 643, 670–71, 512 A.2d 466 (1986): "[P]unitive damages are available in failure-to-warn, strict products liability actions when a manufacturer is (1) aware of or culpably indifferent to an unnecessary risk of injury, and (2) refuses to take steps to reduce that danger to an acceptable level"; *Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 N.J. 37, 49, 477 A.2d 1224 (1984): "To warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious"; *Berg v. Reaction Motors Div.,* 37 N.J. 396, 414, 181 A.2d 487 (1962): "[T]he requirement of willfulness or wantonness ... may be satisfied upon a showing that there has been a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences." We can only echo Judge Fisher's opinion that "[t]erms and phrases such as 'willful,' 'wantonly reckless,' 'intentional,' and 'deliberate act or omission with knowledge of a high degree of harm and reckless indifference to consequences' are certainly open to easy comprehension by the reasonable person or juror." *Leonen,* 717 F.Supp. at 280.

Moreover, both the New Jersey statute and common law on punitive damages require that the jury be instructed to weigh several factors before deciding to award punitive damages and in determining the proper amount. N.J.S.A. 2A:58C–5(b), (d); *Fischer,* 103 N.J. at 672–73, 512 A.2d 466. And, of course, there remains "the judicial exercise of remittitur. Should a trial court determine that an award is 'manifestly outrageous' or 'grossly excessive,' it may reduce that award or order a new trial on punitive damages." *Fischer,* 103 N.J. at 670, 512 A.2d 466, *quoting Cabakov v. Thatcher,* 37 N.J.Super. 249, 260, 117 A.2d 298 (App.Div.1955).

■ Therefore, we do not think that New Jersey's punitive damages regime can be characterized as "standardless" or as failing to provide adequate notice of its scope and application. As Judge Fisher pointed out, the Supreme Court has approved far less specific standards when it has had occasion to decide the criteria for an award of punitive damages. *Leonen,* 717 F.Supp. at 280, *citing Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1639, 75 L.Ed.2d 632 (1983) ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349–50, 94 S.Ct. 2997, 3011–12, 41 L.Ed.2d 789 (1974) (punitive damages in defamation suits

available only if defendant had knowledge of falsity or reckless disregard for the truth). Indeed, the 1987 codification of the case law delineating the showing necessary for an award of punitive damages in products liability cases saves attorneys the trouble of reading cases to discover the operative standards.

Defendant contends that however many factors that the New Jersey courts and legislature set out, the scheme for deciding punitive damages remains unconstitutionally vague because no maximum fine or limit on punitive damages is imposed, and the amount need not bear any relation to the amount of compensatory damages assessed. In support of this, defendant cites Supreme Court cases in which the court has noted that "[b]ecause juries are accorded broad discretion both as to the imposition and amount of punitive damages, the impact of these windfall recoveries is unpredictable and potentially substantial." *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 50, 99 S.Ct. 2121, 2127, 60 L.Ed.2d 698 (1979) (citations omitted); *see also Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 270–71, 101 S.Ct. 2748, 2761–62, 69 L.Ed.2d 616 (1981); *Gertz,* 418 U.S. at 350, 94 S.Ct. at 3012. Yet each of these cases deals with the issue of whether punitive damages should be obtainable at all in a specific statutory or constitutional context. *Foust, supra,* (punitive damages not obtainable against union under the Railway Labor Act); *Newport, supra,* (punitive damages not obtainable against a municipality under § 1983); *Gertz, supra,* (under the first amendment, punitive damages not obtainable in a defamation action where no showing of defendant's knowledge of falsity or reckless disregard for truth). We do not understand defendant to contend that the mere availability of punitive damages in a tort case

constitutes a *per se* violation of due process, which would indeed be a challenge to well-settled law. *Day v. Woodworth,* 13 How. 362, 371 (1851).[1] Defendant contends only that the lack of a ceiling which is applicable in all tort cases is unconstitutionally vague.

However, in their requests to charge submitted to this court, plaintiffs have indicated that they will seek punitive damages of a maximum of three times the compensatory damages which they recover. (Plaintiffs' request to charge, No. 9.) Because defendant has made a facial challenge to the New Jersey system, and has not conceded that a ceiling of treble damages is low enough to pass constitutional muster, our inquiry is not over. We must determine what, if any, ceiling or multiplier on punitive damages is mandated by due process.

■ Some states have adopted such ceilings. *See, e.g.,* Fla.Stat. @ 768.73.(1)(a) (punitive damages limited to treble the compensatory damages); Colo.Rev.Stat., Sec. 13–21–102 (same); Tex.Civ.Proc. & Rem. Code Ann., Secs. 41–001–.008 (punitive damages limited to quadruple the compensatory damages, or $200,000, whichever is greater, in cases involving fraud or gross negligence but not malice or intentional torts). Defendant can offer no authority, however, for the proposition that this sort of legislative limitation should be enshrined as a requirement of due process in all product liability cases. And we may note that it is the relatively "indeterminate" nature of punitive damages which makes them a valuable tool in discouraging the marketing of unsafe products, because the indeterminacy of punitive damages prevents manufacturers from being "able to predict, within certain limits, how much punitive damages will be awarded and figure such a

---

1. "It is a well established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offence rather than the measure of compensation to the plaintiff. We are aware that the propriety of this doctrine has been questioned by some writers; but if re-

peated judicial decisions for more than a century are to be received as the best exposition of what the law is, the question will not admit of argument." 13 How. at 370–71. *See also Missouri Pacific Ry.,* 115 U.S. at 521, 6 S.Ct. at 113; *Coryell v. Colbaugh,* 1 N.J.L. 90, 91 (Sup.Ct. 1791); *Allen v. Craig,* 13 N.J.L. 294 (Sup.Ct. 1833).

number into a cost/benefit analysis. Rather than cure a defect, manufacturers might accept the risk of paying a limited punitive award." *Ah You Man v. Raymark Industries,* 728 F.Supp. 1461, 1468 (D.Haw.1989) *citing Leonen,* 717 F.Supp. at 285, n. 7. Short of taking this arguably counterproductive step, we are satisfied that the New Jersey legislature and courts have done as much as reason and fairness require to ensure that the "purpose and nature of punitive damages [are] carefully explained to the jury." *Fischer,* 103 N.J. at 672, 512 A.2d 466.

The only federal court of appeals to consider the due process challenge to punitive damages upheld an award granted under Mississippi law. *Eichenseer v. Reserve Life Ins. Co.,* 881 F.2d 1355, 1367 (5th Cir.1989), *reh. denied en banc,* 894 F.2d 1414 (5th Cir.1990). The *Eichenseer* court confined its analysis to the specific punitive damages award at issue in the case and "decline[d] to resolve the difficult issue of whether the Due Process Clause acts as a check on the discretion of a trier of fact to impose punitive damages in the absence of any statutory limits...." *Id.* at 1363. Nevertheless, Mississippi was the state whose "wholly standardless" jury instruction on punitive damages was castigated by Justice O'Connor's concurrence in *Banker's Life,* 486 U.S. at 88, 108 S.Ct. at 1656 (O'Connor, J., concurring in part and concurring in the judgment). Unlike Mississippi, there has been no showing that punitive damages in New Jersey have been applied in so disparate a fashion as to function as a "punishment without moorings." *Eichenseer v. Reserve Life Ins. Co.,* 894 F.2d 1414, 1421 (5th Cir.1990) (Jones, J., dissenting from denial of rehearing en banc).

For these reasons, we conclude that defendant's facial challenge to New Jersey punitive damages law as being void for vagueness cannot succeed.

### B. The Process That Is Due

Defendant also urges us to find that New Jersey punitive damages law is unconstitutional under the procedural protections mandated by the due process clause.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Closely related to this argument is defendant's contention that "[t]he clear criminal nature of punitive damages in New Jersey means that the imposition of punitive damages in New Jersey should be accompanied by constitutional protections." (Defendant's brief, p. 12.)

■ Punitive damages originated as "amercements" in a time when the distinction between civil and criminal penalties was far from clear. *Browning–Ferris,* 109 S.Ct. at 2916–2918. Today they continue to be assessed against private parties in favor of private parties, but in the service of the societal interests of punishing and deterring egregious or outrageous conduct. While this function of punishment and deterrence may appear to impinge on the state's power of criminal sanction, there is no brooking the fact that the availability of punitive damages in civil cases was well known to the framers of the Fourteenth Amendment, as it had been for centuries. Limits on amercements were devised to reduce the arbitrary power of the state. "These concerns are clearly inapposite in a case where a private party receives exemplary damages from another party, and the government has no share in the recovery." *Id.,* 109 S.Ct. at 2918; *see also United States v. Halper,* —— U.S. ——, 109 S.Ct. 1892, 1903, 104 L.Ed.2d 487 (1989) ("The protections of the Double Jeopardy Clause are not triggered by litigation between private parties"). So while it is certainly possible that a civil sanction may be so severe as to require the full panoply of criminal procedural protections, this is only true when the government is the plaintiff. *United States v. Ward,* 448 U.S. 242, 249–50, 100 S.Ct. 2636, 2641–42, 65 L.Ed.2d 742 (1980); *Rex Trailer Co. v. United States,* 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956); *Boyd v. United States,* 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886). One reason, of course, is that unlike criminal defendants, civil defendants in suits between private parties are not opposed by the vast resources of the government.

**1304**

■ In *Halper* and *Browning–Ferris*, the Supreme Court refused to extend the protections of the Double Jeopardy Clause and the Excessive Fines Clause to defendants in suits between private parties. We do not see any reason why this court should extend other protections normally enjoyed only by criminal defendants to a defendant in a tort case faced with a claim for punitive damages. The framers of the Bill of Rights and the Fourteenth Amendment could easily have done so, and did not. Defendant advances a number of policy arguments in favor of more stringent standards for the imposition of punitive damages; *i.e.*, the "social costs that result from the risks of ... deterrence inherent in punitive damages law." (Defendant's brief, p. 11.) But policy arguments remain just that. It is not necessary to discount them to conclude that defendants must look elsewhere than the Constitution for their remedy, if a remedy is needed. Defendants will be afforded every opportunity consistent with the requirements of due process in civil cases, including the right to present mitigating evidence on the punitive damages issue, should the case reach that juncture. Defendants have shown us no precedent to do more. It will take a less skeptical and more adventurous court than this one to conclude that the Fourteenth Amendment requires higher standards of procedural protection for civil defendants in these cases than those that have obtained for decades, if not centuries.[2]

### III. The Excessive Fines Clause of the New Jersey Constitution

Defendant argues that the New Jersey punitive damages scheme is subject to review under the prohibition against excessive fines in the New Jersey state constitution. N.J. Const. Art. I § 12. No New Jersey case has so found. It is therefore incumbent upon this court to review New Jersey law and predict how the New Jersey Supreme Court would rule if presented with this issue. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). In so doing, we are mindful of the admonition that "the federal court should proceed with great caution when the effect of its ruling would be to broaden the law beyond the point where any other court has yet ventured." *W.A. Wright, Inc. v. KDI Sylvan Pools, Inc.*, 746 F.2d 215, 218 (3d Cir.1984).

■ We reject defendant's argument. The New Jersey Supreme Court has not been inactive in handling punitive damages issues. *Fischer, supra*, 103 N.J. at 657, 512 A.2d 466 (citing cases). It is hardly likely that New Jersey courts have been blithely reviewing punitive damages awards for decades without once calling attention, even in dicta, to their questionable constitutionality under N.J. Const. Art. I § 12. Cases under this provision deal exclusively with action by the State. Nor is it likely that a challenge to punitive damages as an excessive fine would prevail, if allowed. *State in Interest of L.M.*, 229 N.J.Super. 88, 100–101, 550 A.2d 1252 (App.Div.1988), *cert. denied*, 114 N.J. 485, 555 A.2d 609 (1989): "Fines alone can amount to cruel and unusual punishment under certain circumstances but the situation is rare. Generally the fines are found to be proportionate and fair." The U.S. Supreme Court, after an extensive historical analysis, rejected the argument that punitive damages were reviewable under

---

**2.** We are aware that the New Jersey Supreme Court in *Fischer* stated that it was open to the question of whether the standard of "clear and convincing evidence" should replace the "preponderance of the evidence" standard currently in use. 103 N.J. at 673, 512 A.2d 466. The dissenters in that case presented strong policy arguments in favor of such a change. *Id.* at 681–82, 512 A.2d 466 (O'Hern, J., dissenting). Some states have done so. Colo.Rev.Stat. § 13–25–127 (1987) (punitive damages must be proven beyond a reasonable doubt); *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 723

P.2d 675 (1986) (punitive damages must be proven by clear and convincing evidence); *Tuttle v. Raymond*, 494 A.2d 1353 (Me.1985) (same); *Travelers Indemnity Co. v. Armstrong*, 442 N.E.2d 349 (Ind.1982) (same); *Wangen v. Ford Motor Co.*, 97 Wis.2d 260, 294 N.W.2d 437 (1980) (same). The New Jersey legislature has not. N.J.S.A. 2A:58C–5(a). As we are not convinced that due process requires a higher standard, we leave this question to New Jersey's legislature and courts, which are the authorities primarily entrusted with the forming and reforming of tort law.

the Excessive Fines Clause of the U.S. Constitution in *Browning-Ferris*, 109 S.Ct. at 2919–20. For all of these reasons, we conclude that the New Jersey system of punitive damages does not violate the state constitutional prohibition against excessive fines.

## IV. Equal Protection of the Law

■ Defendant contends that the fact that the jury may consider "the financial condition of the tortfeasor," when determining the amount of punitive damages violates the Fourteenth Amendment's guarantee of equal protection of the laws, because it unconstitutionally discriminates against wealthy defendants. We need not tarry long with this argument. While it has been suggested that certain decisions of the Supreme Court can be interpreted to provide some degree of heightened equal protection scrutiny for the poor, L. Tribe, *American Constitutional Law*, §§ 16–35 to 16–59 (2d ed. 1988), we are unaware of any cases or comments thereon which suggest that a heightened degree of scrutiny for the wealthy is appropriate. "[I]n the areas of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some reasonable basis, it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), *quoting Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911). We find the consideration of the financial status of a defendant in determining the amount of punitive damages to be reasonable. Indeed, given that the purpose of punitive damages is to punish and deter, it is difficult to see how they could possibly be effectively imposed if the jury were kept ignorant concerning the financial condition of the tortfeasor. This argument must therefore be rejected.

## V. Denial of Access to the Courts

■ Defendant contends that New Jersey punitive damages law denies their right of access to the courts to defend themselves. Defendant states: "New Jersey law places defendants in apprehension of oppressive awards of punitive damages without sufficient protections or procedures, and thus creates a chilling effect on defendants' right of access to the courts for their own defense by compelling them to enter into non-judicial settlements." (Defendant's brief, p. 22.) Since we have already decided that New Jersey punitive damages law does not unconstitutionally deprive defendants of sufficient protections or procedures, the basis for this argument is lacking.

## VI. Mass Tort Litigation

Lastly, defendant contends that the imposition of punitive damages against a manufacturer in a multiple plaintiff products liability action violates due process. This problem of punitive damages "overkill" in mass tort litigation was originally described by Judge Friendly in dicta in *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 839–42 (2d Cir.1967). We are not convinced that this case can fairly be described as one of "mass tort litigation." The standard for determining whether a case can be considered one of the "mass tort" genre is whether successive punitive damages awards have been sought in successive litigations resulting from "the same acts or series of acts." *In re School Asbestos Litigation*, 789 F.2d 996, 1005 (3d Cir.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986). Although counsel for both sides in this case appear to have a long-standing familiarity with tire rim cases and with each other, we are uninformed as to how many of these cases have been brought, whether punitive damages have been sought, and the amounts of awards that have been wrought. We are thus left without any facts that would help distinguish this case from a garden variety products liability case.

■ But even granting the point that this case may properly be considered an

instance of mass tort litigation, we think defendant's argument that punitive damages in the mass tort case is unconstitutional still must fail. This argument has twice been employed in an attempt to defeat a recovery of punitive damages under New Jersey law in asbestos cases, with no success. *Juzwin,* 718 F.Supp. at 1235–36; *Leonen,* 717 F.Supp. at 282–86. To the thoughtful consideration of the problem of punitive damages in mass tort cases in these opinions, we can only add that to the extent that the availability of punitive damages in a mass tort case is a form of state regulation of product safety, due process limitations on such damages would seem particularly inappropriate. "[T]he Supreme Court has long held state regulation in the economic realm to be immune from due process invalidation, where the state has presented a valid basis process invalidation, where the state has presented a valid basis for its regulation." *Guarino v. Armstrong World Industries, Inc.,* No. 88–1087–CIV, slip op., p. 6–7 (S.D.Fla., Oct. 13, 1989), *citing West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); *Williamson v. Lee Optical,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).

In any event, we agree with the conclusion in *Leonen* and *Juzwin* that to bar subsequent plaintiffs from recovery after one had recovered punitive damages would be unworkable and unfair. 717 F.Supp. at 284; 718 F.Supp. at 1236. Defendants are, of course, permitted to introduce evidence of other punitive damage awards which have been assessed against it. *Fischer,* 103 N.J. at 670, 512 A.2d 466. But we think that the solution to this problem, if it is a problem in the tire rim industry, "is better dealt with either by the federal legislature or through legislation on a state-by-state basis, with the proviso that all states adopt a uniform system for handling these claims, than on the judicial level." *Leonen,* 717 F.Supp. at 285.

VII. Conclusion

For all of these reasons, defendant Goodyear Tire and Rubber Company's motion for summary judgment on the issue of punitive damages will be denied.