[No. B211815. Second Dist., Div. Two. Oct. 14, 2009.]

CRAIG JENSEN et al., Plaintiffs and Appellants, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

## Counsel

Lappen and Lappen, Jonathan Bailey Lappen; Moxon & Kobrin and Kendrick L. Moxon for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, W. Dean Freeman, Felix E. Leatherwood and Anthony F. Sgherzi, Deputy Attorneys General, for Defendant and Respondent.

## Opinion

**BOREN, P. J.**—This is a challenge to the constitutionality of the Mental Health Services Act, added by California voters through an initiative measure, Proposition 63, at the November 2, 2004 General Election (Proposition 63). Proposition 63 expands funding for mental health services for all Californians by imposing an additional tax of 1 percent on annual income in excess of $1 million. (Rev. & Tax. Code, § 17043.) Proposition 63 also prevents future state funding for mental health services from falling below the amounts allocated for these services in 2003. (Welf. & Inst. Code, § 5891.)

We find no constitutional infirmity in the challenged portions of Proposition 63. An income tax may be rationally based on a taxpayer's income level and ability to pay, and there is no need to show that a particular taxpayer personally benefits from a tax assessed for the public good. Taxpayers earning more than $1 million annually do not comprise a "suspect class" requiring a strict scrutiny constitutional analysis. Further, Proposition 63 is valid even if it is not a constitutional amendment.

## FACTS

Craig and Sally Jensen (the Taxpayers) sued the Franchise Tax Board (FTB) to recover part of their 2006 California state income tax. The tax was

imposed by Revenue and Taxation Code section 17043 on income that exceeded $1 million. The Taxpayers remitted the tax under protest and filed a "Claim for Refund" with the FTB. The FTB took no action on the Taxpayers' claim for a refund.

The Taxpayers allege that they are victims of arbitrary discrimination, in violation of the federal and state equal protection clauses. In their view, wealthy individuals are singled out to bear the burden of a public expense, while others are excused from that burden. The Taxpayers reason that the wealth of a taxpayer is not a rational basis for a tax assessed for a specific purpose, such as mental health services.

The Taxpayers also challenge the requirement in Welfare and Institutions Code section 5891 that the state maintain funding for mental health services at 2003 levels. They claim that this is an unconstitutional suspension of state budgetary powers, so that the budgets for mental health services "are cast in stone, and are not subject to reduction by either the legislature or the governor without a statutory change." The Taxpayers allege that making this change in the creation of the state budget required an amendment to the state Constitution. Proposition 63 is not a constitutional amendment.

The FTB demurred to the Taxpayers' complaint. The trial court declined to strike down a generally applicable tax scheme based on income, noting that states have great leeway in making classifications that produce reasonable systems of taxation. The court also refused to strike down Proposition 63 simply because it was not presented as a constitutional amendment. The court sustained the FTB's demurrers without leave to amend and dismissed the Taxpayers' lawsuit.

## DISCUSSION

### Standard of Review and Standing to Sue

Appeal lies from the trial court's signed dismissal order, after demurrers were sustained without leave to amend. (Code Civ. Proc., §§ 581, subd. (f)(1), 581d; *Serra Canyon Co. v. California Coastal Com.* (2004) 120 Cal.App.4th 663, 667 [16 Cal.Rptr.3d 110].) Review is de novo: we exercise our independent judgment to determine whether a cause of action has been stated as a matter of law. (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115 [55 Cal.Rptr.2d 276].) In reviewing initiative measures, " '[w]e do not consider or weigh the economic or social wisdom or general propriety of the initiative, but rather evaluate its constitutionality in the context of established constitutional standards.' " (*California Family Bioethics Council, LLC v. California Institute for Regenerative Medicine* (2007) 147 Cal.App.4th 1319,

1338 [55 Cal.Rptr.3d 272].) The " 'initiative power must be liberally construed to promote the democratic process.' " (*Ibid.*)

 A taxpayer may file suit to recover "a tax claimed to be illegal," after the tax has been paid. (Cal. Const., art. XIII, § 32.) A taxpayer's claim to recover taxes is deemed to have been denied—and a taxpayer may proceed with a lawsuit—if the FTB takes no action within six months after the claim is filed. (Rev. & Tax. Code, §§ 19382, 19385.) The FTB does not contest that the Taxpayers have standing to bring this lawsuit after they paid their taxes and brought a claim before the FTB to recover those taxes.

### Overview of Proposition 63

The text of Proposition 63 articulates the purpose or policy motivating enactment of the Mental Health Services Act. The measure's findings and declarations acknowledge that "[m]ental illnesses are extremely common; they affect almost every family in California." "Failure to provide timely treatment can destroy individuals and families," and untreated mental illness "is the leading cause of disability and suicide and imposes high costs on state and local government." Untreated children are unable to learn, and untreated adults lose their ability to work and be independent, often becoming homeless and subject to frequent hospitalizations or incarceration, costing billions of dollars annually. California has developed effective models of providing a full range of integrated services for individuals with serious mental illness, with the goal of self-sufficiency for people who may otherwise face homelessness or dependence on the state for years to come. The programs include early diagnosis and treatment to prevent disability and thereby save lives and money. (Prop. 63, § 2.)

Proposition 63 elaborates the mechanism for funding these mental health programs. "To provide an equitable way to fund these expanded services while protecting other vital state services from being cut, very high-income individuals should pay an additional 1 percent of that portion of their annual income that exceeds one million dollars ($1,000,000). About one-tenth of 1 percent of Californians have incomes in excess of one million dollars ($1,000,000). They have average pre-tax income of nearly five million dollars ($5,000,000). The additional tax paid pursuant to this represents only a small fraction of the amount of tax reduction they are realizing through recent changes in the federal income tax law and only a small portion of what they save on property taxes by living in California as compared to the property taxes they would be paying on multi-million dollar homes in other states." (Prop. 63, § 2.)

## Constitutionality of Revenue and Taxation Code Section 17043[1]

■ The Taxpayers challenge Revenue and Taxation Code section 17043 on the grounds that it violates the equal protection clause.[2] The equal protection clause " 'compel[s] recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' " (*Darces v. Woods* (1984) 35 Cal.3d 871, 885 [201 Cal.Rptr. 807, 679 P.2d 458].) State taxation statutes are subject to equal protection challenges. (*Western & Southern L. I. Co. v. Bd. of Equalization* (1981) 451 U.S. 648, 655–656 [68 L.Ed.2d 514, 101 S.Ct. 2070].) Statutes must be upheld unless they are clearly, positively and unmistakably unconstitutional. (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 780 [35 Cal.Rptr.2d 814, 884 P.2d 645].)

a. *Wealthy Individuals Are Not Part of a Suspect Class Requiring Strict Scrutiny*

■ The Taxpayers argue that a strict scrutiny constitutional analysis applies. Classifications that disadvantage a "suspect class" or impinge upon the exercise of a "fundamental right" are subject to strict scrutiny; this requires the state to demonstrate that its classification "has been precisely tailored to serve a compelling governmental interest." (*Plyler v. Doe* (1982) 457 U.S. 202, 216–217 [72 L.Ed.2d 786, 102 S.Ct. 2382]; see *Darces v. Woods, supra*, 35 Cal.3d at p. 886.)[3] The Taxpayers maintain that wealth is a suspect classification and the tax imposed by Proposition 63 affects only "the class of 'wealthy' persons."

■ We are unaware of any case authority holding that wealthy individuals form a "suspect class" deserving of a heightened degree of scrutiny. Suspect classifications include race, gender, national origin, and alienage. Wealth generally confers benefits, and does not require the special protections afforded to suspect classes. Wealth has "none of the traditional indicia of suspectness: the class is not saddled with such disabilities, or subjected to

---

[1] The pertinent portion of Revenue and Taxation Code section 17043 reads, "(a) For each taxable year beginning on or after January 1, 2005, in addition to any other taxes imposed by this part, an additional tax shall be imposed at the rate of 1 percent on that portion of a taxpayer's taxable income in excess of one million dollars ($1,000,000)."

[2] A state cannot "deny to any person within its jurisdiction the equal protection of the laws" under the Fourteenth Amendment of the federal Constitution. Similarly, the state Constitution provides that a person may not be "denied equal protection of the laws." (Cal. Const., art. I, § 7.)

[3] Fundamental rights are " 'explicitly or implicitly secured by the Constitution.' " (*Harris v. McRae* (1980) 448 U.S. 297, 312 [65 L.Ed.2d 784, 100 S.Ct. 2671].) The Taxpayers have not identified any fundamental right impinged by Proposition 63.

such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." (*San Antonio School District v. Rodriguez* (1973) 411 U.S. 1, 28 [36 L.Ed.2d 16, 93 S.Ct. 1278].) The Supreme Court "has never heretofore held that wealth discrimination alone provides an adequate basis for invoking strict scrutiny." (*Id.* at p. 29.) Punitive damages— which require a jury to consider "the financial condition of the tortfea- sor"—do not violate the equal protection clause even though they have a disproportionate impact on wealthy defendants. (*Germanio v. Goodyear Tire & Rubber Co.* (D.N.J. 1990) 732 F.Supp. 1297, 1305 ["we are unaware of any cases . . . which suggest that a heightened degree of scrutiny for the wealthy is appropriate"].)

The Taxpayers rely on *Serrano v. Priest* (1971) 5 Cal.3d 584 [96 Cal.Rptr. 601, 487 P.2d 1241] (*Serrano*), in which the Supreme Court struck down a public school financing system based on local real property assessed valua- tions, because an educational system that produces disparities of opportunity based upon district wealth violates principles of equal protection. (*Id.* at pp. 598–600.) In *Serrano*, the court afforded constitutional protection to students from poor districts because state law diminished that group's fundamental right to an education equal to that of wealthy districts. (*Id.* at pp. 614–615; see *Hartzell v. Connell* (1984) 35 Cal.3d 899, 923–926 [201 Cal.Rptr. 601, 679 P.2d 35].) *Serrano* is inapposite because it does not purport to identify the wealthy as a protected class.[4]

In sum, there is no basis for holding that a heightened degree of scrutiny is appropriate for tax legislation merely because it impacts taxpayers who have incomes of more than $1 million annually.

b. *A Rational Basis Analysis Applies to the Review of Taxation Systems*

A tax "should be sustained if we find that its classification is rationally related to achievement of a legitimate state purpose." (*Western & Southern L. I. Co. v. Bd. of Equalization, supra*, 451 U.S. at p. 657.) "So long as a system of taxation is supported by a rational basis, and is not palpably arbitrary, it will be upheld despite the absence of ' "a precise, scientific

---

[4] The cases cited in *Serrano* relate to unconstitutional treatment of indigents, not discrimina- tion against wealthy people. (*Serrano, supra*, 5 Cal.3d at pp. 597–598; see, e.g., *Harper v. Virginia Bd. of Elections* (1966) 383 U.S. 663 [16 L.Ed.2d 169, 86 S.Ct. 1079] [poll tax]; *Tate v. Short* (1971) 401 U.S. 395 [28 L.Ed.2d 130, 91 S.Ct. 668] [indigent defendant cannot be sent to jail for inability to pay a fine imposed for a traffic violation]; *Douglas v. California* (1963) 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814] [indigent defendant has a right to counsel on appeal]; *Smith v. Bennett* (1961) 365 U.S. 708 [6 L.Ed.2d 39, 81 S.Ct. 895] [indigent defendant has a right to petition for habeas corpus despite his inability to pay a filing fee].)

uniformity" ' of taxation." (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 234 [149 Cal.Rptr. 239, 583 P.2d 1281]; see *Kahn v. Shevin* (1974) 416 U.S. 351, 356, fn. 10 [40 L.Ed.2d 189, 94 S.Ct. 1734].) The Legislature "is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it." (*Carmichael v. Southern Coal Co.* (1937) 301 U.S. 495, 509 [81 L.Ed. 1245, 57 S.Ct. 868] (*Carmichael*).)

■ In a rational basis analysis, *any* conceivable state purpose or policy may be considered by the courts. (*Nordlinger v. Hahn* (1992) 505 U.S. 1, 15 [120 L.Ed.2d 1, 112 S.Ct. 2326]; *Heller v. Doe* (1993) 509 U.S. 312, 320 [125 L.Ed.2d 257, 113 S.Ct. 2637].) The state "has no obligation to produce evidence to sustain the rationality of a statutory classification," which " 'may be based on rational speculation unsupported by evidence or empirical data.' " (*Heller v. Doe, supra*, 509 U.S. at p. 320.) The party challenging the constitutionality of a state law must " 'negative every conceivable basis which might support it.' " (*Ibid.*) "A classification does not fail rational-basis review because it ' "is not made with mathematical nicety or because in practice it results in some inequality." ' " (*Id.* at p. 321.) The burden of demonstrating the invalidity of a challenged classification "rests squarely upon *the party who assails it.*" (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 17 [112 Cal.Rptr. 786, 520 P.2d 10].)

c. *There Is a Rational Basis for Taxing Incomes over $1 Million*

■ The Supreme Court has "long held that '[w]here taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.' " (*Kahn v. Shevin, supra*, 416 U.S. at p. 355; see *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization, supra*, 22 Cal.3d at pp. 233–234.) The Taxpayers argue that "in arriving at a reasonable system of taxation, a state may not arbitrarily single out a specific group to bear the burden while excusing non-group members." They maintain that there must be a rational connection "between the group being taxed and the problem being addressed" by the tax.

The Taxpayers are mistaken in thinking that taxpayers in a particular tax bracket cannot be singled out for an income tax to benefit society at large.

The Supreme Court "has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation." (*Carmichael, supra*, 301 U.S. at p. 509.) Indeed, "[n]othing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied." (*Id.* at pp. 521–522; see *Knox v. City of Orland* (1992) 4 Cal.4th 132, 142 [14 Cal.Rptr.2d 159, 841 P.2d 144]; *Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 442 [79 Cal.Rptr.3d 312, 187 P.3d 37]; *Bay Area Cellular Telephone Co. v. City of Union City* (2008) 162 Cal.App.4th 686, 695 [75 Cal.Rptr.3d 839].) A taxpayer cannot object to a tax "devoted to a public purpose, that the benefits paid and the persons to whom they are paid are unrelated to the persons taxed and the amount of the tax which they pay—in short, that those who pay the tax may not have contributed to the [problem addressed by the tax] and may not be benefited by the expenditure." (*Carmichael, supra*, 301 U.S. at p. 521.)

"A tax is not an assessment of benefits. It is, as we have said, a means of distributing the burden of the cost of government. The only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes. [Citation.] Any other view would preclude the levying of taxes except as they are used to compensate for the burden on those who pay them, and would involve the abandonment of the most fundamental principle of government—that it exists primarily to provide for the common good." (*Carmichael, supra*, 301 U.S. at pp. 522–523; see *Thomas v. Gay* (1898) 169 U.S. 264, 279–280 [42 L.Ed. 740, 18 S.Ct. 340]; *Commonwealth Edison Co. v. Montana* (1981) 453 U.S. 609, 622–623 [69 L.Ed.2d 884, 101 S.Ct. 2946].)

In this instance, the Taxpayers object that individuals with high incomes do not have a particular need or use for the mental health services funded by Proposition 63, i.e., there is no connection "between the group being assessed and the use of the funds collected." The argument fails, because there is no need to contrive a link between the taxpayer and the services being funded. For example, "A corporation cannot object to the use of the taxes which it pays for the maintenance of schools because it has no children." (*Carmichael, supra*, 301 U.S. at p. 523.) In short, the Taxpayers cannot "resist the payment of the tax because it is not expended for purposes which are peculiarly beneficial to [them]." (*Ibid.*)

■ The Taxpayers assert that the tax imposed by Proposition 63 on high-income individuals "is arbitrary and capricious." A classification among

taxpayers is "arbitrary, oppressive or capricious [if] made to depend upon differences of color, race, nativity, religious opinions, political affiliations or other considerations having no possible connection with the duties of citizens as taxpayers," because exemptions from taxation based on such irrelevant classifications "would be pure favoritism" (*American Sugar Refining Co. v. Louisiana* (1900) 179 U.S. 89 [45 L.Ed. 102, 92, 21 S.Ct. 43]) amounting to " '[c]lear and hostile discriminations against particular persons and classes' " (*Magoun v. Illinois Trust & Savings Bank* (1898) 170 U.S. 283, 294 [42 L.Ed. 1037, 18 S.Ct. 594]). The Taxpayers in this appeal do not fall into any forbidden category having no possible connection with the duty to pay taxes; rather, the classification drawn here is based on the neutral—and relevant— consideration of income level.

Taxpayer income is a valid basis for drawing distinctions between taxpayers, even if the result is an unequal burden among all taxpayers. "The Federal Constitution imposes no restraints on the State in regard to unequal taxation." (*Magoun v. Illinois Trust & Savings Bank, supra*, 170 U.S. at p. 295.) " 'Indeed, this whole argument of a right under the Federal Constitution to challenge the tax law on the ground of inequality in the burdens resulting from the operation of the law' " has been " 'put at rest.' " (*Id.* at p. 296.) The Fourteenth Amendment "was not intended to compel the State to adopt an iron rule of equal taxation." (170 U.S. at p. 295.)

■ The tax imposed by Proposition 63 is not arbitrary merely because a person earning $1,000,001 is subject to the tax, while a person earning $999,999 is exempt. The government has leeway in " 'drawing lines' " below which individuals are exempt from a tax. (*Kahn v. Shevin, supra*, 416 U.S. at p. 355; see *Williams v. Vermont* (1985) 472 U.S. 14, 22 [86 L.Ed.2d 11, 105 S.Ct. 2465].) Drawing a line, for purposes of taxation, "is the type of distinction which the law is often called upon to make. . . . It separates large incomes which are taxed from the smaller ones which are exempt, as it marks here the difference between the proprietors of larger businesses who are taxed and the proprietors of smaller businesses who are not." (*Carmichael, supra*, 301 U.S. at pp. 510–511, fn. omitted [upholding the imposition of an unemployment compensation tax on businesses with eight or more employees while exempting businesses with seven or fewer].)

A tax will be upheld if it operates " 'equally and uniformly upon all persons in similar circumstances.' " (*Magoun v. Illinois Trust & Savings Bank*,

*supra,* 170 U.S. at p. 296.) The tax imposed by Proposition 63 operates equally and uniformly on all taxpayers who have incomes in excess of $1 million.

■ The Taxpayers perceive themselves as victims of a populist movement to "soak the rich." The desire of the majority of the electorate to tax a minority of citizens based on their earnings is not a basis for overturning an income tax. The courts "do not substitute their social and economic beliefs" to supplant the judgment of the enacting body. (*Ferguson v. Skrupa* (1963) 372 U.S. 726, 730 [10 L.Ed.2d 93, 83 S.Ct. 1028]; see *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 814 [258 Cal.Rptr. 161, 771 P.2d 1247].) "[R]ational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.' " (*Heller v. Doe, supra,* 509 U.S. at p. 319.) "[E]ven improvident decisions will eventually be rectified by the democratic process and . . . judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." (*Vance v. Bradley* (1979) 440 U.S. 93, 97 [59 L.Ed.2d 171, 99 S.Ct. 939], fn. omitted; see *American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 396 [204 Cal.Rptr. 671, 683 P.2d 670]; *Nordlinger v. Hahn, supra,* 505 U.S. at pp. 17–18 [upholding California's Prop. 13 against a claim that it denies equal protection by disadvantaging "younger and poorer California families" buying homes, and "startup businesses" purchasing commercial property, that are obliged to pay much higher property taxes than established families and businesses owning similar properties].)

■ Income tax rates may be rationally based on a taxpayer's ability to pay. "Income taxes are a recognized method of distributing the burdens of government, favored because requiring contributions from those who realize current pecuniary benefits under the protection of the government, and because the tax may be readily proportioned to their ability to pay." (*Shaffer v. Carter* (1920) 252 U.S. 37, 51 [64 L.Ed. 445, 40 S.Ct. 221].) In one challenge, a taxpayer argued that progressive tax systems are constitutionally unsound because they "are based on wealth alone" and "a mere arbitrary abuse of power." (*Brushaber v. Union Pac. R. R.* (1916) 240 U.S. 1, 21, 25 [60 L.Ed. 493, 36 S.Ct. 236].) The Supreme Court replied that progressive taxes have been an accepted fixture since the early history of the country, and it does not offend constitutional principles to tax people unequally. (*Id.* at pp. 25–26.) In an earlier challenge to a progressive tax, the court wrote, "taxes imposed with reference to the ability of the person upon whom the burden is placed to bear the same have been levied from the foundation of the government." (*Knowlton v. Moore* (1900) 178 U.S. 41, 109 [44 L.Ed. 969,

20 S.Ct. 747].) ▮▮▮ In the present case, the tax exemption line is drawn at $1 million: below that income level, no tax is imposed to fund the Mental Health Services Act. The tax is not unconstitutional merely because most people fall within the tax exemption.

### Constitutionality of Welfare and Institutions Code Section 5891[5]

The Taxpayers observe that the core functions of the legislative branch include passing laws, levying taxes, and making appropriations. These functions require the Legislature to take into account the needs of the state and its financial resources. The Taxpayers assert that the provisions of Welfare and Institutions Code section 5891 attempt to modify the state Constitution "by totally taking the mental health services budget away from both the Governor and the Legislature." In the Taxpayers' view, this revision of the budgetary process must be accomplished by a constitutional amendment, not by an initiative merely adding a statute.

▮▮▮ In article IV, section 1 of the state Constitution, the people "reserve to themselves the powers of initiative and referendum." The initiative power is " ' " 'one of the most precious rights of our democratic process' " ' " and the courts resolve any reasonable doubts about an initiative in favor of the exercise of that power. (*Kennedy Wholesale, Inc. v. State Bd. of Equalization* (1991) 53 Cal.3d 245, 250 [279 Cal.Rptr. 325, 806 P.2d 1360].) The electorate's lawmaking powers "are identical to the Legislature's." (*State Comp. Ins. Fund v. State Bd. of Equalization* (1993) 14 Cal.App.4th 1295, 1300 [18 Cal.Rptr.2d 526].)

---

[5] The challenged portion of Welfare and Institutions Code section 5891 provides that "The funding established pursuant to this act shall be utilized to expand mental health services. These funds shall not be used to supplant existing state or county funds utilized to provide mental health services. The state shall continue to provide financial support for mental health programs with not less than the same entitlements, amounts of allocations from the General Fund and formula distributions of dedicated funds as provided in the last fiscal year which ended prior to the effective date of this act. The state shall not make any change to the structure of financing mental health services, which increases a county's share of costs or financial risk for mental health services unless the state includes adequate funding to fully compensate for such increased costs or financial risk. These funds shall only be used to pay for the programs authorized in Section 5892. These funds may not be used to pay for any other program. These funds may not be loaned to the state General Fund or any other fund of the state, or a county general fund or any other county fund for any purpose other than those authorized by Section 5892."

The Legislature does not have the exclusive power to raise taxes. (*Kennedy Wholesale, Inc. v. State Bd. of Equalization, supra*, 53 Cal.3d at p. 249.) That power is shared with the electorate, which may raise taxes through a statutory initiative. (*Id.* at pp. 249–253 [ballot initiative raising taxes on tobacco products].) The Taxpayers contend that Proposition 63 goes beyond the electorate's right to raise taxes through the initiative process: By locking in the funding for mental health services, the electorate has usurped the role of the legislative branch by impairing its ability to formulate a budget.

The courts have upheld the initiative power against a claim that it "greatly impairs the Legislature's essential function of balancing the budget." (*Carlson v. Cory* (1983) 139 Cal.App.3d 724, 729 [189 Cal.Rptr. 185].) The *Carlson* court considered the constitutionality of initiative statutes that repealed inheritance and gift tax laws in California, which opponents believed impermissibly impacted the Legislature's "fiscal management function." (*Ibid.*) The court rejected the challenge. It noted that the initiative power of local electors cannot be exercised where " ' "[T]he inevitable effect would be greatly to impair or wholly destroy the efficacy of some other governmental power, the practical application of which is essential . . .".' " (*Ibid.*, quoting *Simpson v. Hite* (1950) 36 Cal.2d 125, 134 [222 P.2d 225].) Applying this rule to statewide measures, the court concluded that the tax initiative statutes being challenged "do not either destroy or severely limit the power of the state Legislature to tax or to balance the budget" because it could exercise its "considerable discretion to limit spending in order to achieve a balanced budget." (*Carlson v. Cory, supra*, 139 Cal.App.3d at p. 730.) The Taxpayers in this case have made no showing that Proposition 63 would "destroy or severely limit" the Legislature's power to formulate a budget.

In any event, the provisions of Proposition 63 are not "cast in stone," as suggested by the Taxpayers. An initiative statute may be amended or repealed by the Legislature, with the approval of the electorate. (Cal. Const., art. II, § 10, subd. (c); *Rossi v. Brown* (1995) 9 Cal.4th 688, 696, fn. 2 [38 Cal.Rptr.2d 363, 889 P.2d 557].) By its own terms, all of the provisions in Proposition 63 "may be amended by a two-thirds vote of the Legislature so long as such amendments are consistent with and further the intent of this act"; and, by a majority vote, the Legislature may add provisions "to clarify procedures and terms." (Prop. 63, § 18.)[6] Thus, if the mental health services funding requirements prove too onerous, the electorate or the Legislature may vote to diminish them in the future. As written, Proposition 63 presents no constitutional infirmity.

---

[6] In fact, the Legislature has already amended Welfare and Institutions Code section 5891. A 2008 amendment states that the State Controller "may use the funds created pursuant to this part for loans to the General Fund." (Welf. & Inst. Code, § 5891, subd. (b).)

## DISPOSITION

The judgment is affirmed.

Ashmann-Gerst, J., and Chavez, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 21, 2010, S178199.