129 F.3d 1334
 97 Cal. Daily Op. Serv. 9140, 98 Daily Journal
D.A.R. 1066
JERRON WEST, INC., a California corporation, dba/J.
Hettinger Interiors; Jerry Hettinger,
individually; Ronald Smith, Plaintiffs-Appellants,
v.
STATE OF CALIFORNIA STATE BOARD OF EQUALIZATION; Board of
Equalization of California, State of California State Board
of Equalization Members; Johan Klehs; Dean Andal; Ernest
J. Dronenburg, Jr.; Brad Sherman; Kathleen Connell, State
Controller and Does 1 through 25, inclusive, Defendants-Appellees.
 No. 96-17209.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 5, 1997.
Decided Dec. 8, 1997.
Order Denying Motion to Amend,
but Amending Decision
Jan. 29, 1998.
 
 Edward O.C. Ord and Christian M. Winther (on the briefs), Ord & Norman, San Francisco, CA, for plaintiffs-appellants.
 Paul D. Gifford, Deputy Attorney General, Oakland, CA, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California; Charles A. Legge, District Judge, Presiding. D.C. No. CV-96-02687-CAL.
 Before: CHOY, ALARCON and T.G. NELSON, Circuit Judges.
 ALARCON, Senior Circuit Judge.
 
 
 1
 Plaintiffs-appellants Jerry A. Hettinger, Ronald Smith, and Jerron West, Inc. ("the Corporation") (collectively, "the Taxpayers") appeal the district court's dismissal for lack of jurisdiction of their 42 U.S.C. § 1983 action seeking to enjoin the California State Board of Equalization ("Board") from conducting administrative tax collection proceedings against them for the assessment and collection of state sales tax. We affirm the district court's dismissal because we hold that the Tax Injunction Act, 28 U.S.C. § 1341, divests the federal courts of jurisdiction over this action.
 
 
 2
 * Hettinger and Smith are the two principals of the Corporation. Each own 50% of the Corporation's stock. In 1993, an employee left the Corporation and reported allegations of tax evasion by the Taxpayers to the IRS and the Board. Events followed which eventually led the Taxpayers to this court.
 
 
 3
 In May 1993, a government search of the Corporation's premises under an uncontested, valid warrant resulted in the confiscation of several volumes of records. After a lengthy investigation, the IRS Criminal Investigation Division recommended criminal prosecution of Hettinger and Smith for various income tax violations allegedly committed in 1989, 1990, and 1991. The U.S. Attorney General filed a nine-count information against them on December 12, 1996. On December 16, 1996, Hettinger and Smith were arraigned and entered not guilty pleas.
 
 
 4
 In August 1993, the Board conducted a sales tax audit of the Corporation, and on November 29, 1993, the Board issued a Notice of Determination for the period beginning April 1, 1989, and ending March 31, 1993. The notice proposed $683,132.19 as the total amount owed for sales taxes due, interest, and civil fraud penalties.
 
 
 5
 On December 29, 1993, the Corporation petitioned the Board for a redetermination, requesting a hearing on the matter. The Corporation also requested a stay of the hearing and any other administrative proceedings until the criminal investigation against Hettinger and Smith had concluded or the federal criminal statute of limitations had expired. The Corporation wrote to the Board on numerous occasions regarding a stay, claiming that a failure to grant it would result in a denial of the Taxpayers' constitutional rights. The Board denied the requests and set the redetermination hearing for August 21, 1996. The Corporation again requested a stay, asserting the same constitutional grounds. The Board again denied its request.
 
 
 6
 On July 29, 1996, the Taxpayers filed a civil rights action for an injunction and declaratory relief in district court alleging that the Board's denial of the stay requests violated their federally-protected civil rights. Specifically, they alleged the following: (1) violation of their Fifth Amendment right against a taking of property without due process of law; (2) violation of their Fifth Amendment right to remain silent and to decline to incriminate themselves; (3) violation of their Fourth Amendment right against illegal searches and seizures; and (4) violation of their post-indictment right to move to suppress evidence under the Federal Rules of Criminal Procedure.
 
 
 7
 The Taxpayers filed an Ex Parte Motion for Temporary Restraining Order, Order to Show Cause, Preliminary Injunction, and Expedited Hearing in the district court. The district court denied the motion for a temporary restraining order and dismissed the action on August 13, 1996. The court determined that the Tax Injunction Act, 28 U.S.C. § 1341, deprived it of jurisdiction because the Taxpayers seek to enjoin, suspend, or restrain state tax proceedings and the Taxpayers had an adequate state remedy. The Taxpayers moved for reconsideration, but the court denied the motion on October 1, 1996.
 
 
 8
 Meanwhile, on August 21, 1996, the Board held the redetermination hearing. On September 18, 1996, the Board issued a Notice of Redetermination concluding that the Corporation 1) "has not presented any evidence to show that the retail sales established in the audit computations are excessive; 2) ... has not presented any evidence to show that certain sales are exempt on the basis of being made in interstate commerce."
 
 
 9
 On October 30, 1996, the Taxpayers timely appealed the district court's dismissal.
 
 II
 
 10
 We must first address the Board's assertion that this appeal should be dismissed as moot. The Board contends that the complaint seeks an injunction barring it from conducting the administrative redetermination hearing and proceedings until after the completion of any criminal proceedings. The Board argues that an injunction is now pointless because it conducted the administrative hearing on the Taxpayers' petition for redetermination on August 21, 1996, and issued a notice of denial on September 18, 1996.
 
 
 11
 A controversy is moot if effective relief cannot be granted. Continental Casualty Co. v. Fibreboard Corp., 4 F.3d 777, 778 (9th Cir.1993). "The question is not whether the precise relief sought at the time the application for an injunction was filed is still available ... [but] whether there can be any effective relief." Northwest Envtl. Defense Ctr. v. Gordon, 849 F.2d 1241, 1244-45 (9th Cir.1988). The Board correctly asserts that the complaint seeks an injunction barring the Board from proceeding with the redetermination hearing. However, the complaint also seeks "[a]ny other relief in law or in equity that the Court deems appropriate." Thus, although the district court cannot enjoin proceedings that have already occurred, it still has the power to attempt to fashion an effective remedy to redress the alleged violations. Id. at 1245 (holding that "plaintiffs are not required ... to have asked for the precise form of relief that the district court may ultimately grant"). Accordingly, the Taxpayers' action is not moot.
 
 III
 
 12
 The Taxpayers assert that the district court erred in dismissing their complaint for lack of subject matter jurisdiction. A dismissal for lack of subject matter jurisdiction is a question of law reviewed de novo. Evans v. Chater, 110 F.3d 1480, 1481 (9th Cir.1997). The Taxpayers primarily contend that the Tax Injunction Act, 28 U.S.C. § 1341, ("Act") is inapplicable because it is a narrow jurisdictional withdrawal statute that only applies to actions challenging the constitutionality of California's sales tax and its accompanying procedures. They argue that their action is not barred by the Act because they merely seek to vindicate their civil rights by enjoining the Board's unconstitutional conduct. We disagree.
 
 
 13
 The Act states that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Based on a plain reading of the statute, the district court does not have jurisdiction over the Taxpayers' action if it seeks district court interference with California's tax assessment and collection process. The only exception is where a state does not provide the Taxpayers with an adequate state remedy. We must first determine whether the Taxpayers seek district court interference with California's tax assessment and collection process as prohibited by the Act.
 
 
 14
 The relevant portion of California's sales tax assessment procedure is as follows. The Board initially conducts an audit and then issues a notice of its determination. The taxpayer can petition the Board for a redetermination of that assessment. See CAL. REV. & TAX. CODE § 6561.[1] The taxpayer can also request an oral hearing regarding the redetermination. See § 6562. After the redetermination process is complete, the Board issues a notice of its decision, and the assessed amount will become final and collectible 30 days after service of notice. See §§ 6564, 6565. If the taxpayer wishes to further contest the assessment, the taxpayer must pay the tax owed and then file an administrative claim for a refund. See § 6901 et seq. The taxpayer can also file a state court action for a refund after the Board has issued its decision on the refund claim. See § 6933.
 
 
 15
 The Taxpayers' action in federal district court seeks to enjoin the Board's redetermination hearing and any other proceedings while the threat of federal prosecution is pending. This request falls squarely within the prohibitions of the Act. The assessed tax is not due and collectible until 30 days after the Board has held the redetermination hearing and served its decision. See § 6564. Thus, the hearing and the administrative proceedings that the Taxpayers seek to enjoin in federal court are an integral part of California's sales tax assessment and collection scheme. See §§ 6561-62, 6565.
 
 
 16
 Any other form of effective relief from the allegedly unconstitutional assessment would similarly intrude upon and disrupt California's taxation process. As a result, regardless of the Taxpayers' claimed purpose for filing the action, the explicit language of the Act divests jurisdiction from the district court.
 
 
 17
 Surrounding case law also supports the conclusion that the Act bars federal jurisdiction in this case. In Blangeres v. Burlington Northern, Inc., 872 F.2d 327, 328 (9th Cir.1989), we held that even an indirect restraint on tax assessment would violate the Act. The employees in Blangeres sought to enjoin the production of certain records of earnings by the employer corporation to the state taxing authorities. The Blangeres court reasoned that the requested injunction would preclude the taxing authorities from taxing the employees because the authorities would not have the information necessary to conduct the assessment. Id. Thus, the Act prohibits relief where it would result in a restraint on tax assessment even though achieved indirectly. Id.; see also Comenout v. State of Washington, 722 F.2d 574, 577 (9th Cir.1983) (holding that the Act may bar claims of unconstitutional arrests, searches, and seizures in addition to injunctive relief, where the gravamen of the complaint involves enforcement of the state tax scheme).
 
 
 18
 The Act has been broadly construed in other contexts as well. For example, in California v. Grace Brethren Church, 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982), the Supreme Court held that the Act applies to declaratory relief actions despite the absence of explicit language because such actions "may in every practical sense operate to suspend collection of the state taxes." Id. at 408, 102 S.Ct. at 2507. Likewise, in Marvin F. Poer & Co. v. Counties of Alameda, 725 F.2d 1234 (9th Cir.1984), we held that the Act applies to actions for damages or refunds despite the absence of explicit language because federal jurisdiction over state refund actions would "readily circumvent" the Act. Id. at 1236.
 
 
 19
 The Act "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." Tully v. Griffin, Inc., 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976). Its primary purpose is to prevent federal court intrusion into state tax collection, an area which deserves the utmost comity to state law and procedure. See e.g., Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 522, 101 S.Ct. 1221, 1233, 67 L.Ed.2d 464 (1981) (stating that the Act "was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes") (citing 81 Cong. Rec. 1415 (1937)); Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 301, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943) (stating that the Act "was predicated upon the desirability of freeing, from interference by the federal courts, state procedures which authorize litigation challenging a tax only after the tax has been paid"); Dillon v. State of Montana, 634 F.2d 463, 466 (9th Cir.1980) (concluding that the Act "is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems"). For further discussion of the Congressional intent underlying the Act, see Rosewell, 450 U.S. at 522-24, 101 S.Ct. at 1233-34 and Capitol Industries-EMI, Inc. v. Bennett, 681 F.2d 1107, 1112 n. 12 (9th Cir.1982).
 
 
 20
 The Supreme Court has also held that, irrespective of the Act, the principle of comity alone would bar federal courts from granting damages relief in state tax cases because such relief would intrude upon and disrupt a state's enforcement of its tax system. Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 114, 102 S.Ct. 177, 184, 70 L.Ed.2d 271 (1981); see also, National Private Truck Council v. Oklahoma Tax Comm., 515 U.S. 582, 586, 115 S.Ct. 2351, 2354, 132 L.Ed.2d 509 (1995) ("We have long recognized that principles of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration."). Therefore, because the Taxpayers' action seeks federal court intrusion into California's taxation process, the Act divests the district court of jurisdiction.
 
 IV
 
 21
 While the Act excludes jurisdiction over actions seeking district court intrusion into the state taxation process, the Act provides an exception where there is no adequate state remedy. The Taxpayers contend California does not provide them with an adequate remedy because the state's administrative and judicial remedies are ineffective as applied to their situation. They assert that they were unable to present evidence at the redetermination hearing because doing so would have jeopardized their constitutional rights in the criminal proceedings. The Taxpayers argue that their failure to present "sufficient factual material and testimony" at the redetermination hearing precludes them now from litigating the merits of their constitutional claims or the tax assessment before the Board or in state court.
 
 
 22
 The Supreme Court and this court have concluded that California's tax refund remedy is generally a "plain, speedy and efficient" remedy under the Act. Franchise Tax Bd. v. Alcan Aluminium, 493 U.S. 331, 338, 110 S.Ct. 661, 665, 107 L.Ed.2d 696 (1989); Capitol Indus.-EMI, Inc. v. Bennett, 681 F.2d 1107, 1113-14 (9th Cir.1982). The Taxpayers' failure to present sufficient evidence at the redetermination hearing due to constitutional concerns does not render their state remedies ineffective. The Taxpayers failed to pursue their state administrative remedy ("claim for a refund") or their state judicial remedy ("state refund action").
 
 
 23
 An administrative claim for a refund must state the specific grounds upon which the claim is based. See § 6904(a). The plain language of § 6904(a) does not limit the claim for a refund to only those issues and evidence presented at the redetermination hearing. See id. It merely states that "[e]very claim shall be in writing and shall state the specific grounds upon which the claim is founded." Id.
 
 
 24
 Thus, the correct procedure for taxpayers under California law is to file a claim for a refund before the Board. If the criminal proceedings have concluded by the time taxpayers file an administrative claim for a refund, they can submit records and statements in support of the claim without jeopardizing their civil rights. If the criminal proceedings have not concluded by this time, taxpayers can still file a claim for a refund and present their constitutional arguments for a stay of action on the claim until after the criminal proceedings have concluded. See § 6908(b) ("If any person who has filed a claim for refund requests the [B]oard to defer action on the claim, the [B]oard, as a condition to deferring action, may require the claimant to waive interest for the period during which the person requests the [B]oard to defer action on the claim."). If the Board grants the stay request, then taxpayers can submit their evidence in support of the claim for a refund at the conclusion of the criminal proceedings.
 
 
 25
 If the Board denies the stay request, taxpayers can proceed with the claim for a refund, asserting that the redetermination hearing was unconstitutional because it was held in violation of their civil rights. The Board has the authority to consider and remedy any alleged errors it previously made in assessing the amount owed. Section 6981 authorizes the Board to cancel assessed amounts that have been "illegally determined ... by the [B]oard." § 6981. Taxpayers can assert in their claim for a refund that the Board illegally determined the assessed amount by denying taxpayers the right to present material evidence.
 
 
 26
 Should the Board reject taxpayers' claim for a refund, taxpayers can seek state court review of the Board's rejection. See § 6933; see also § 6932 (stating that a claim for a refund before the Board is a prerequisite to filing any state court action for the "recovery of any amount alleged to have been erroneously or illegally determined or collected"). The issues raised and the evidence presented in the administrative claim for a refund, not the petition for redetermination, frame the issues that may be subsequently litigated in a state refund action. See § 6933 ("Within 90 days after the mailing of the notice of the [B]oard's action upon a [refund] claim ..., the claimant may bring an action against the [B]oard on the grounds set forth in the claim."); American Alliance Ins. Co. v. State Bd. of Equalization, 184 Cal.Rptr. 674, 678, 134 Cal.App.3d 601, 609 (1982) ("The claim for refund thus frames and restricts the issues for litigation."). Therefore, the state court can review taxpayers' arguments and evidence regarding the allegedly unconstitutional and erroneous tax assessment if taxpayers first raised them in their claim for a refund. See e.g., Barclays Bank Int'l Ltd. v. Franchise Tax Bd., 14 Cal.Rptr.2d 537, 540, 10 Cal.App.4th 1742, 1749 (1992) (holding that the taxpayers sufficiently stated their commerce clause and due process clause challenges in their claim for a refund); Jimmy Swaggart Ministries v. Board of Equalization, 250 Cal.Rptr. 891, 906, 204 Cal.App.3d 1269, 1291 (1988) (holding that, because the taxpayer raised only the First Amendment violation in the claim for a refund, the other constitutional grounds for a refund could not be litigated in the state refund action); Duffy v. State Bd. of Equalization, 199 Cal.Rptr. 886, 889, 152 Cal.App.3d 1156, 1163 (1984) (holding that the taxpayer sufficiently tendered its unconstitutional vagueness challenge against the Board's regulation in the claim for a refund).
 
 
 27
 For these reasons, we conclude the Taxpayers' failure to present sufficient evidence at the redetermination stage because of concerns that their constitutional rights in the criminal proceedings would be jeopardized, did not render their otherwise adequate state remedies ineffective.
 
 
 28
 AFFIRMED.
 
 ORDER
 Jan. 29, 1998
 
 29
 Appellants in the above-entitled opinion, Jerron West, Inc., Jerry Hettinger, and Ronald Smith, filed a motion to amend opinion on January 5, 1998. Appellants request the opinion be amended "to reflect the fact that testimony was presented to the board and evidence offered to the extent that the evidence would not result in a waiver of Appellants' constitutional rights." Appellants' motion with respect to this request is DENIED. For the sake of accuracy, however, the opinion in the above-entitled case filed December 8, 1997 is amended as follows:
 
 
 30
 Appellants' request to amend headnote 7, copyrighted by Barclays Law Publishers is also DENIED.
 
 
 
 [1]
 Unless otherwise indicated, all section citations refer to the California Revenue and Taxation Code