**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GILBERT P. HYATT,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>BETTY T. YEE, in her official capacity as California Franchise Tax Board member and California State Board of Equalization member; DIANE L. HARKEY, in her official capacity as California State Board of Equalization member; JEROME E. HORTON, in his official capacity as California Franchise Tax Board member; MICHAEL COHEN, in his official capacity as California Franchise Tax Board member; GEORGE RUNNER, in his official capacity as California State Board of Equalization member; FIONA MA, in her official capacity as California State Board of Equalization member and Franchise Tax Board member,<br>*Defendants-Appellees*. | No. 15-15296<br><br>D.C. No.<br>2:14-cv-00849-<br>GEB-DAD<br><br><br>OPINION |

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Jr., District Judge, Presiding

Argued and Submitted February 17, 2017
San Francisco, California

Filed September 26, 2017

Before:  William A. Fletcher, Julio M. Fuentes,* and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Fuentes

**SUMMARY****

**Tax / Civil Rights**

The panel affirmed the district court's dismissal of plaintiff's action, brought under 42 U.S.C. § 1983, arising from his contested administrative proceedings of a California Franchise Tax Board ruling that he owed close to $7.4 million in taxes, penalties and interest.

Plaintiff's initial tax deficiency, compounding daily with 3% interest grew to over $55 million at the time he filed his complaint in this case.  The taxes were assessed on income plaintiff earned during the 1991 and 1992 tax years, during which plaintiff alleges he had moved from California to Nevada.  Plaintiff alleged that he had been unconstitutionally

---

* The Honorable Julio M. Fuentes, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

targeted and that so much time had passed in the administrative review of his tax claims that he could no longer receive due process. He asked the district court to enjoin California from collecting this tax bill.

The panel agreed with the district court that the Tax Injunction Act barred this suit because plaintiff had a plain, speedy and efficient remedy for his claims. The panel noted that a taxpayer seeking to contest his tax bill solely on the basis that he was not a resident of California during the disputed period has two options. He could either pay now and litigate later, or bring his claim through a protest-then-pay process, which allows him to delay paying the disputed tax. A taxpayer who pays now and litigates later can bring his claims to state court within six months, which guarantees an expeditious route to the state courts on the taxpayer's liability. A taxpayer who initially challenges a residency-based income tax assessment through the protest-then-pay administrative process may elect to use the pay-then-protest process at any point by paying the disputed tax, thus guaranteeing a route to state court within six months.

The panel held that even though plaintiff in this case chose to challenge his tax assessment through the protest-then-pay process, he still had a plain, speedy, and efficient remedy available because he could pursue the pay-then-protest process. The panel rejected plaintiff's claim that requiring him to pay his accrued tax bill and switch remedies in order to pursue his constitutional claims would be a bait and switch in violation of his due process rights. The panel further rejected plaintiff's claim that he does not have access to a speedy remedy because the Appeals Board has not completed his administrative appeal, pending since 2008. The panel held that the pay-then-protest remedy now provides plaintiff with a speedy remedy, even if the protest-

then-pay remedy has not. Finally, the panel rejected plaintiff's claims that he would not be able to bring his constitutional claims in a pay-then-protest proceeding.

---

**COUNSEL**

Erwin Chemerinsky (argued), UC Irvine School of Law, Irvine, California; Donald J. Kula and Oliver M. Gold, Perkins Coie LLP, Los Angeles, California; Malcolm Segal, Segal & Associates PC, Sacramento, California; for Plaintiff-Appellant.

Michael von Loewenfeldt (argued), Brady R. Dewar, and James M. Wagstaffe, Kerr Wagstaffe LLP, San Francisco, California; Seth P. Waxman (argued), Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.; Debbie Leonard, James Bradshaw, and Adam Hosmer-Henner, McDonald Carano Wilson LLP, Reno, Nevada; Cynthia J. Larsen, Katie DeWitt, and David W. Spencer, Orrick Herrington & Sutcliffe LLP, Sacramento, California; for Defendants-Appellees.

---

**OPINION**

FUENTES, Senior Circuit Judge:

For over 22 years, Plaintiff Gilbert Hyatt has contested in administrative proceedings a California Franchise Tax Board ruling that he owed close to $7.4 million in taxes, penalties, and interest. This initial deficiency, compounding daily with 3% interest, grew to over $55 million at the time he filed his complaint in this case. The taxes were assessed on income he earned during the 1991 and 1992 tax years,

during which Hyatt alleges he had moved from California to Nevada. Finally, while his administrative proceedings were still pending, Hyatt filed this suit in the district court, claiming that he had been unconstitutionally targeted and that so much time had passed in the administrative review of his tax claims that he can no longer receive due process. He asked the district court to enjoin California from collecting this tax bill.

Because we agree with the district court that the Tax Injunction Act bars it from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of [this] tax under State law where," as here, "a plain, speedy and efficient remedy may be had" in the state court, we affirm the judgment of the District Court.

## I.  BACKGROUND

### A.  California's Statutory Tax Framework

Under California law, a taxpayer seeking to "prevent or enjoin the assessment or collection of" a California residency-based income tax may not file suit in state court without first exhausting the administrative remedies set forth in the California Revenue and Taxation Code.[1] In general, a California taxpayer must "pay now, litigate later."[2] However, a taxpayer seeking to contest his tax bill solely on the basis that he was not a resident of California during the disputed period has two options. The taxpayer may either pay now and litigate later, or may bring his claim through a

---

[1] Cal. Rev. & Tax. Code § 19381.

[2] *Sahadi v. Scheaffer*, 155 Cal. App. 4th 704, 734 (2007) ("[A] taxpayer may not obtain judicial review of the validity of a tax which is due but has not been paid.").

protest-then-pay process, which allows him to delay paying the disputed tax. There is a significant difference: a taxpayer who pays now and litigates later can bring his claims to state court within six months, which guarantees an expeditious route to the state courts on the taxpayer's liability. A taxpayer who disputes his residency through the protest-then-pay process, however, must wait until the administrative agencies render their decisions before filing a challenge in state court.

### 1. Postdeprivation "Pay-Then-Protest" Process

The "pay-then-protest" process[3] requires the challenging taxpayer to make "payment of the tax," after which the taxpayer can file a refund claim with the Franchise Tax Board (the "Tax Board").[4] If the Tax Board "fails to mail notice of action on [the] . . . refund claim *within six months* after the claim [is] filed, the taxpayer may . . . bring an action [in state court] against the [Tax Board] . . . on the grounds set forth in the claim for the recovery of . . . [the] overpayment."[5] If the Tax Board acts on the challenger's refund claim and denies it, a taxpayer "claiming that the tax computed and assessed is void . . . may bring an action [in state court], upon the grounds set forth in that claim for refund . . . for the recovery of the . . . amount paid" plus interest.[6] These grounds need not be included in the "four

---

[3] This proceeding is largely governed by California Revenue & Taxation Code § 19382.

[4] Cal. Rev. & Tax. Code § 19382.

[5] Cal. Rev. & Tax. Code § 19385 (emphasis added).

[6] Cal. Rev. & Tax. Code § 19382.

corners of the initial claim," but the Tax Board must have "actual notice" of them.[7]

## 2. Predeprivation "Protest-then-Pay" Process

The plaintiff in this case chose to challenge his tax assessment through the protest-then-pay process. A taxpayer who challenges an assessment through this process[8] must "file with the [Tax Board] . . . a written protest against the proposed deficiency assessment, specifying in the protest the grounds upon which it is based."[9] If the protest is filed, the taxpayer may request that the Tax Board "reconsider the assessment of the deficiency."[10] If the protest is denied, the taxpayer may "appeal[ ] in writing from the action of the [Tax Board] ... to [the California State Board of Equalization ("Appeals Board")]."[11] "The [Appeals Board] . . . shall hear and determine the appeal," and an unsuccessful taxpayer

---

[7] *J.H. McKnight Ranch, Inc. v. Franchise Tax Bd.*, 110 Cal. App. 4th 978, 987 (2003) ("We see no basis for construing the statutes setting out the administrative exhaustion requirement so as to ignore actual notice the Board may have had from sources other than the four corners of the initial claim. The Supreme Court has at least implicitly agreed with this conclusion" (citing *Wallace Berrie & Co. v. State Bd. of Equalization*, 707 P.2d 204 (1985)).

[8] This proceeding is largely governed by California Revenue & Taxation Code § 19381.

[9] Cal. Rev. & Tax. Code § 19041.

[10] Cal. Rev. & Tax. Code § 19044.

[11] Cal. Rev. & Tax. Code § 19045.

may "file[ ] a petition for rehearing."[12] After rehearing before the Appeals Board, a taxpayer may seek review in a California state court.[13]

A taxpayer who initially challenges a residency-based income tax assessment through the protest-then-pay administrative process may elect to use the pay-then-protest process at any point by paying the disputed tax, thus guaranteeing a route to state court within six months.[14]

## B.  Factual History[15]

Hyatt alleges that in 1991, he moved from California to Nevada. Two years later, the Tax Board commenced an audit to determine whether Hyatt owed additional California state income taxes for the 1991 tax year. The Tax Board initiated a second audit in 1996 regarding the 1992 tax year. Ultimately, the Tax Board determined that Hyatt owed

---

[12] Cal. Rev. & Tax. Code §§ 19047–48.

[13] Cal. Rev. & Tax. Code § 19381.

[14] Cal. Rev. & Tax. Code § 19335.

[15] Defendants brought both a facial and a factual challenge to jurisdiction, but the District Court decided only the facial challenge. "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). However, "a court may take judicial notice of matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal quotations and citations omitted).

$1.8 million for the 1991 tax year and $5.6 million for the 1992 tax year.

Without first paying his taxes, Hyatt challenged his tax bill on the grounds that he did not owe these taxes because he was a resident of Nevada during 1991 and 1992. His Tax Board protest lasted 11 years. Then, in 2008, Hyatt filed an administrative appeal of the Tax Board's determinations before the Appeals Board. That appeal has yet to be decided. Hyatt alleges that "the delays in completing the administrative process fall squarely and primarily at the feet of the [Tax Board]."

In April 2014, Hyatt brought this action in the district court against the members of the Tax Board and Appeals Board under 42 U.S.C. § 1983, seeking to enjoin the pending administrative tax review process. At the time he filed suit, his tax bill had ballooned to over $55 million. In his Complaint, Hyatt alleges violations of the due process and equal protection clauses of the Fourteenth Amendment, and alleges that he "can no longer receive a full and fair adjudication on the merits due to the extreme passage of time and resulting loss of material evidence." He claims that during the long delay in the administrative process, "material witnesses have passed away, memories of witnesses have faded, and documents relevant and important to Hyatt are no longer available." Because of these events, he claims that he cannot properly challenge the Tax Board's allegations concerning his residency. Hyatt further states that during this administrative process, the Tax Board was out to "get" him and that the Tax Board singled him out for reasons not rationally related to any legitimate state interest.

## C. The Tax Injunction Act

The Tax Injunction Act provides that: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."[16] This provision "restricts the power of federal district courts to prevent collection or enforcement of state taxes."[17] The Supreme Court has "interpreted and applied the Tax Injunction Act as a 'jurisdictional rule' and a 'broad jurisdictional barrier.'"[18]

The Tax Injunction Act was passed as "only one of several statutes reflecting congressional hostility to federal injunctions issued against state officials in the aftermath of [the Supreme] Court's decision in *Ex parte Young*."[19] It "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations."[20] It prevents federal courts from intruding into state tax collection, "an area which deserves

---

[16] 28 U.S.C. § 1341.

[17] Arkansas v. Farm Credit Servs. of Cent. Arkansas, 520 U.S. 821, 823 (1997).

[18] Id. at 825 (quoting Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation, 425 U.S. 463, 470 (1976)). See also Franchise Tax Bd. of California v. Alcan Aluminium Ltd., 493 U.S. 331, 338 (1990) (The Act "limit[s] drastically federal district court jurisdiction.").

[19] *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 n.28 (1981).

[20] *Tully v. Griffin, Inc.*, 429 U.S. 68, 73 (1976).

the utmost comity to state law and procedure."[21] This is because "[t]he power to tax is basic to the power of the State to exist."[22] Thus, "[g]iven the systemic importance of the federal balance, and given the basic principle that statutory language is to be enforced according to its terms, federal courts must guard against interpretations of the Tax Injunction Act which might defeat its purpose and text."[23]

Under the Tax Injunction Act, a litigant cannot challenge the administration of state tax law in federal court if the state court provides "a plain, speedy and efficient remedy" for the taxpayer's claims. This "narrow exception"[24] requires only that a state court remedy "meet 'certain minimal procedural

---

[21] *Jerron West, Inc. v. State of Cal., State Bd. of Equalization*, 129 F.3d 1334, 1338 (9th Cir. 1997) (citing *Rosewell*, 450 U.S. at 522 (stating that the Act "was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes"); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 301 (1943) (stating that the Act "was predicated upon the desirability of freeing, from interference by the federal courts, state procedures which authorize litigation challenging a tax only after the tax has been paid"); *Dillon v. State of Mont.*, 634 F.2d 463, 466 (9th Cir.1980) (concluding that the Act "is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems")).

[22] *Arkansas*, 520 U.S. at 826 ("The federal balance is well served when the several States define and elaborate their own laws through their own courts and administrative processes and without undue interference from the Federal Judiciary.").

[23] *Id.* at 827.

[24] Redding Ford v. Cal. State Bd. of Equalization, 722 F.2d 496, 497 (9th Cir. 1983).

criteria.'"[25] Specifically, a plain, speedy, and efficient remedy must provide a taxpayer with "a full hearing and judicial determination at which [he] may raise any and all constitutional objections to the tax."[26]

For a remedy to be "plain," "the procedures available in state court must be certain."[27] A remedy is "efficient" "unless it imposes an 'unusual hardship . . . requiring ineffectual activity or an unnecessary expenditure of time or energy.'"[28] A remedy is "speedy" "if it does not entail a significantly greater delay than a corresponding federal procedure."[29] To satisfy these requirements, a remedy "need not necessarily be the best remedy available or even equal to or better than the remedy which might be available in the federal courts."[30]

---

[25] *Lowe v. Washoe Cty.*, 627 F.3d 1151, 1155 (9th Cir. 2010) (quoting *Rosewell*, 450 U.S. at 512).

[26] *Rosewell*, 450 U.S. at 514.

[27] *May Trucking Co. v. Oregon Dep't of Transp.*, 388 F.3d 1261, 1270 (9th Cir. 2004) (citing *Direct Mktg. Ass'n, Inc. v. Bennett,* 916 F.2d 1451, 1453 (9th Cir.1990) (holding that a state remedy "is not plain within the meaning of the Tax Injunction Act . . . if there is uncertainty regarding its availability or effect" (internal quotation and citations omitted)).

[28] *Lowe*, 627 F.3d at 1156 (quoting *Rosewell*, 450 U.S. at 518).

[29] *US W., Inc. v. Nelson*, 146 F.3d 718, 725 (9th Cir. 1998) (interpreting the same language in a different statute).

[30] *Mandel v. Hutchinson*, 494 F.2d 364, 367 (9th Cir. 1974) (internal quotations and citations removed).

## II.   DISCUSSION

"A dismissal for lack of subject matter jurisdiction is a question of law reviewed de novo."**[31]**

Hyatt appeals the district court's decision that, because California's pay-then-protest process continued to provide a plain, speedy and efficient remedy for Plaintiff even though he had decided to pursue the protest-then-pay process, the Tax Injunction Act stripped the court of jurisdiction to hear this suit.

Hyatt's appeal raises three principal arguments for review:**[32]** (1) a plain, speedy and efficient remedy is not available because Hyatt cannot be required to pursue the pay-then-protest process per California Revenue & Taxation Code § 19382 to have his constitutional claims heard; (2) the protest-then-pay method has not offered Hyatt a speedy remedy and the pay-then-protest remedy will not, and (3) Hyatt does not have a plain remedy, because it is uncertain whether he could bring his constitutional claims as part of either process.**[33]**

---

**[31]** *Jerron*, 129 F.3d at 1337.

**[32]** Hyatt's brief raises additional bases of appeal, but they can be more succinctly framed in these three arguments.

**[33]** Defendants respond that even if this court finds that Hyatt's suit is not barred by the Tax Injunction Act, then (1) it is barred by the general principles of comity; (2) we should abstain pursuant to *Younger v. Harris*, 401 U.S. 37 (1971); or (3) we should affirm dismissal under Federal Rule of Civil Procedure 12(b)(6) because Hyatt fails to state a claim. We need not reach the first two bases, because the suit is barred

At the outset, we note that the U.S. Supreme Court and our court have held that, "[t]o the extent they are available, California's refund procedures constitute a plain, speedy, and efficient remedy."[34] Moreover, the U.S. Supreme Court has, on several occasions, approved of pay-then-protest remedies as plain, speedy, and efficient.[35] The issue then, is whether the unique circumstances of this case have prevented a plain, speedy, and efficient remedy from being available here.

---

by the Tax Injunction Act. We cannot reach the last basis, because we do not have jurisdiction to do so.

[34] *Alcan Aluminium*, 493 U.S. at 338. *See also Jerron*, 129 F.3d at 1339 ("The Supreme Court and this court have concluded that California's tax refund remedy is generally a 'plain, speedy and efficient' remedy under the Act."); *Mandel*, 494 F.2d at 367 ("We have held previously that the California refund procedure is a plain, speedy and efficient remedy."); *Aronoff v. Franchise Tax Bd. of State of Cal.*, 348 F.2d 9, 11 (9th Cir. 1965) ("It has consistently been held, without a single instance of deviation, that the refund action provided by California Personal Income Tax Law is a 'plain, speedy and efficient remedy' such as to invoke the restraints of 28 U.S.C. § 1341.").

[35] *See Reich v. Collins*, 513 U.S. 106, 111 (1994) ("Due process, we should add, also allows the State to maintain an exclusively postdeprivation regime"); *California v. Grace Brethren Church*, 457 U.S. 393, 416 (1982) ("Finally, we must keep in mind that at the time that it passed the Tax Injunction Act, Congress was well aware that refund procedures were the sole remedy in many States for unlawfully collected taxes.") (citing S.Rep.No.1035, 75th Cong., 1st Sess., 1 (1937); H.R.Rep.No.1503, 75th Cong., 1st Sess., 2 (1937)); *Rosewell*, 450 U.S. at 512, 523 (finding that a pay-then-protest process was a speedy, efficient, and plain remedy under the Tax Act and relying on legislative reports demonstrating congressional awareness that refunds were the exclusive remedy in many state tax systems).

## A. Does The Pay-Then-Protest Process Provide a Sufficient Remedy Where Hyatt Chose to Use the Protest-then-Pay Process?

Hyatt objects to the district court's determination that the pay-then-protest process can provide him with "a plain, speedy and efficient remedy" even though he has pursued a protest-then-pay process for the past 22 years. Citing *Reich v. Collins*,[36] and *Newsweek v. Florida Department of Revenue*,[37] Hyatt argues that requiring him to pay his large accrued tax bill and switch remedies in order to pursue his constitutional claims would be a "bait and switch" in violation of his due process rights.[38]

Hyatt's reliance on *Reich* and *Newsweek* is misplaced. In *Reich*, a taxpayer sued for a refund under Georgia's tax refund statute, but the Georgia courts held that the statutes were not applicable and thus the taxpayer had no way to seek a refund of his disputed tax.[39] The U.S. Supreme Court, however, held that, while a state is entitled to provide either a protest-then-pay remedy, or a pay-then-protest remedy, or both, it may not "reconfigure its scheme, unfairly, in *midcourse*—to 'bait and switch.'"[40] Specifically, the Court held that a state violated federal due process when it offered a statutory pay-then-protest remedy, and then removed that

---

[36] 513 U.S. 106 (1994) (per curiam).

[37] 522 U.S. 442 (1998).

[38] Hyatt's Br. at 29.

[39] 513 U.S. at 108–09.

[40] *Id*. at 110–11 (emphasis added).

remedy after a taxpayer had paid his disputed taxes, so that he no longer had *any* means to challenge his tax bill.[41] In *Newsweek*, where the magazine Newsweek was given no opportunity to seek a refund for a state tax it had already paid that was later found invalid, the Court reiterated this holding.[42]

In this case, Hyatt had, and still has, a plain, speedy, and efficient remedy available: he can pursue the pay-then-protest process. Unlike in *Reich* and *Newsweek*, the state did not "bait and switch" Hyatt.[43] Hyatt chose to pursue the protest-then-pay process knowing that it only permitted him to challenge his residency in California during 1991 and 1992. Hyatt now seeks to add additional claims nullifying the tax, but he would have to pay his outstanding tax bill to do so. Of course, if Hyatt pursues this path and is successful, he will be refunded the entire amount of his tax bill, including the taxes that have accrued during the period he has pursued the protest-then-pay process.

---

[41] *Id.*

[42] 522 U.S. at 444–45 ("While Florida may be free to require taxpayers to litigate first and pay later, due process prevents it from applying this requirement to taxpayers, like Newsweek, who reasonably relied on the apparent availability of a postpayment refund when paying the tax. Newsweek is entitled to a clear and certain remedy and thus it can use the refund procedures to adjudicate the merits of its claim.").

[43] *See also Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1242 (11th Cir. 1991) (rejecting "literal and technical attempts" to get around the Tax Act in a way that "would clearly conflict with the principle underlying the Tax Injunction Act that the federal courts should generally avoid interfering with the sensitive and peculiarly local concerns surrounding state taxation schemes.").

Hyatt further argues that he cannot be forced to use the pay-then-protest remedy to pursue his constitutional claims, because he would need to forego his statutory right to, if successful, recover the attorney's fees that he has spent challenging his tax bill already.[44] It is not clear that Hyatt would, in fact, be forced to forgo his attorney's fees, but even if Hyatt must abandon some of his claims to attorney's fees by pursuing the pay-then-protest process, this does not mean that the state has deprived him of a plain, speedy, and efficient remedy.[45]

## B.  Does Hyatt Have A Speedy Remedy?

Hyatt notes that the Appeals Board has not completed his administrative appeal, pending since 2008, and that, as of the filing of this appeal, briefing before the Appeals Board was not completed and no hearing date was set.[46] Hyatt alleges in his complaint that Defendants are responsible for this delay. Thus, Hyatt argues, he does not have access to a speedy remedy, and federal jurisdiction must lie.

---

[44] Hyatt's Br. at 29 (citing Cal. Rev. & Tax. Code § 19717 ("The prevailing party may be awarded a judgment for reasonable litigation costs incurred, in the case of any civil proceeding brought by or against the State of California in a court of record of this state in connection with the determination, collection, or refund of any tax, interest, or penalty under this part.")).

[45] *Cf. Rosewell*, 450 U.S. at 517 (holding the same with regard to payment of interest and stating that "There is no question that under the Illinois procedure, the court will hear and decide any federal claim. Paying interest or eliminating delay would not make the remedy any more 'plain.'").

[46] Hyatt's Br. at 24.

It would certainly be troubling if the administrative protest-then-pay process had been delayed for so long due to the fault of Defendants.[47] However, we need not decide whether Hyatt's protest-then-pay process has been speedy to date, and thus we need not consider whether Hyatt or Defendants caused this significant delay.[48] Even if the protest-then-pay process has not provided Hyatt with a speedy remedy, at any time during this process, Hyatt could, and Hyatt still can, get to state court *within six months* if he brings an action through the pay-then-protest process and the Appeals Board does not render a final determination sooner. The California Tax Code provides that,

---

[47] *See Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 433 (2d Cir. 1989) ("Slightly more troublesome is [the] claim that the . . . proceedings, the earliest of which have lingered over ten years in pretrial proceedings, are simply not speedy . . . . [W]e have some concern over any proceeding that takes over ten years to come to trial . . . .").

[48] After argument in this case, we issued an order inviting "[t]he state parties . . . to move for judicial notice of documents that may shed light on the administrative and judicial proceedings that have taken place, and the possible reasons for delay, since the time Plaintiff-Appellant Hyatt first contested the California income tax liability at issue in this case." *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[A] court may take judicial notice of matters of public record" (internal quotations and citations omitted)).

Hyatt and Defendants both did so, disputing the cause of the delay in this case. They offer documents from years of related litigation in Nevada and New York. We need not consider whether judicial notice of any documents addressing the cause in the delay is appropriate, as whether Hyatt, the Defendants, or some combination caused the delay, it does not affect the availability of a speedy remedy here. The pending judicial notice motions are denied as moot.

> [i]f the Franchise Tax Board fails to mail notice of action on any refund claim within six months after the claim was filed, the taxpayer may, prior to mailing of notice of action on the refund claim, consider the claim disallowed and bring an action against the Franchise Tax Board on the grounds set forth in the claim for the recovery of the whole or any part of the amount claimed as an overpayment.[49]

In our view, the pay-then-protest remedy now provides Hyatt a speedy remedy, even if the protest-then-pay remedy has not.

## C. Does Hyatt Have Access to A Plain Remedy for His Constitutional Claims?

Finally, Hyatt argues that it is unclear whether he would be able to raise his constitutional claims in a pay-then-protest proceeding, for two reasons.[50] First, he says that Section 19832 authorizes a taxpayer to "claim[] that the tax

---

[49] *See* Cal. Rev. & Tax. Code § 19385.

[50] Hyatt also argues that the protest-then-pay process would not provide him with a forum for raising these new constitutional claims, because that statute limits the adjudication to the issue of the taxpayer's residency during the period in question. Hyatt's Br. at 21; *Franchise Tax Bd. v. Superior Court*, 212 Cal. App. 3d 1343, 1347 (Ct. App. 1989) ("The statutes do not authorize the superior court to prevent or enjoin collection of the tax, but permit it only to determine the fact of [the taxpayer's] residence in this State during the year or years set forth in the notice or notices of deficiency assessment" (internal quotations and citations omitted)). This is irrelevant, if the pay-then-protest process is sufficient.

computed and assessed is void" and to file a claim for "recovery of the whole or any part of the amount paid."[51] Hyatt argues that it is unclear whether a California court will find that his constitutional claims contend that "the tax computed and assessed is void" and thus can be heard in state court. Second, Hyatt argues that he may be barred from bringing these claims because they were not "the grounds set forth in the claim for refund."[52] Therefore, he argues, his remedy is not "plain" and this suit should not be barred.

First, as Hyatt's own complaint makes clear, he does seek to void a tax. In his complaint, Hyatt seeks to "enjoin Defendants . . . from continuing the investigation and administrative proceedings against Hyatt that seek to assess California state income taxes, or adjudicate the assessment and collection of California state income taxes, against Hyatt for the 1991 and 1992 tax years."[53] He also seeks to "enjoin Defendants from continuing to assess or threaten to assess, or collect or threaten to collect, taxes, penalties and interest from Hyatt for the 1991 and 1992 tax years."[54] The district court correctly concluded that "[i]t is evident that Hyatt

---

[51] Cal. Rev. & Tax. Code § 19382 ("Except as provided in Section 19385, after payment of the tax and denial by the Franchise Tax Board of a claim for refund, any taxpayer claiming that the tax computed and assessed is void in whole or in part may bring an action, upon the grounds set forth in that claim for refund, against the Franchise Tax Board for the recovery of the whole or any part of the amount paid.").

[52] *Id.*

[53] Compl. ¶ 107, ER 773–74.

[54] *Id.*

seeks to void the tax or taxes assessed against him."[55] Moreover, California courts have found that constitutional claims can qualify as claims seeking to void a tax.[56] It is thus clear that California allows such claims to be brought in the pay-then-protest process. Hyatt's argument thus fails to show that the pay-then-protest process will not provide a plain remedy.

Hyatt's second argument, that he will not be able to add constitutional claims that arose after the filing of his protest to a state court case, presents a much closer question. As Hyatt understands the state statutes, "if [he] pays the tax while his [Appeals Board] appeal is pending. . . [his] prior 'protests' . . . , for the 1991 and 1992 tax years, . . . will be deemed to be his refund claim."[57] A problem arises because

> [t]hose protests do not contain Mr. Hyatt's constitutional claims as grounds for the claim because he filed the protest before the [Tax Board]'s and [Appeals Board]'s offending

---

[55] ER 12. *See also* Black's Law Dictionary 1805 (10th ed. 2014) (defining "void" as "[t]o render of no validity or effect; to annul; nullify."). Hyatt seeks to nullify his tax bill.

[56] *Capitol Indus.-EMI, Inc. v. Bennett*, 681 F.2d 1107, 1117 (9th Cir. 1982). *See, e.g.*, *Jensen v. Franchise Tax Bd.*, 178 Cal. App. 4th 426, 433 (2009).

[57] Reply Br. at 14–15 (citing Cal. Rev. & Tax. Code § 19335 ("If, with or after the filing of a protest or an appeal to the State Board of Equalization . . . , a taxpayer pays the tax protested before the Franchise Tax Board acts upon the protest, or the board upon the appeal, the Franchise Tax Board or board shall treat the protest or the appeal as a claim for refund or an appeal from the denial of a claim for refund filed under this article.")).

conduct. Under Section 19382, a refund
action is limited to the grounds set forth in the
refund claim. Accordingly, Mr. Hyatt could
not raise the constitutional issues in his newly
converted Section 19382 procedure because
his refund claims (*i.e.*, his original protests)
do not include the constitutional violations.[58]

Under our reading of the statutes, if Hyatt pays and then
protests, the California state courts will likely allow Hyatt to
add these constitutional claims to a state court suit
challenging the tax. The state court may find that these are
not the sorts of claims that a taxpayer must include in his
initial protest or refund because they refer to conduct during
the ongoing Tax Board and Appeals Board review, rather
than the grounds on which the taxpayer contested the tax
initially. Thus, the legislative purpose served by applying the
administrative exhaustion requirement would not apply to
these claims. Moreover, even if the California courts do
apply the exhaustion requirement to these claims, they may
find that the Tax Board was "on notice" of these claims,
given the long history of litigation between these parties,
where Hyatt may have previously raised these issues.[59] The
Appeals Board may also permit Hyatt to amend his petition
to add these additional grounds.[60] At oral argument counsel
for the Tax Board and the Appeals Board both represented

---

[58] *Id.* at 15.

[59] *See J.H. McKnight Ranch*, 110 Cal. App. 4th at 986–87.

[60] *See* Cal. Rev. & Tax. Code § 60351.

that the constitutional challenges raised here could be raised in state court.[61]

### III.  CONCLUSION

In light of the strong principles of comity that guide our interpretation of the Tax Injunction Act, we decline to enjoin the tax proceedings in this case. We hold that "narrow exception"[62] to the Tax Act's jurisdictional bar cannot be expanded to allow this suit, and we affirm the judgment of the district court.[63]

**AFFIRMED**.

---

[61] Even if Hyatt is barred from bringing these constitutional claims in a state court proceeding, he can seek to raise the same claims in a suit in state court against the responsible individuals.

[62] *Redding Ford*, 722 F.2d at 497.

[63] This is particularly true in light of the fact that Hyatt's own decisions contributed to the constitutional claims he seeks to now bring. While we do not consider whether Hyatt contributed to the delay in the protest-then-pay proceedings, at any point, Hyatt could have paid his tax bill and brought a suit in state court protesting the tax within six months.