Filed 12/21/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOHN DOE,<br><br>　　　Plaintiff and Appellant,<br>v.<br><br>CHAD FINKE, as Executive Director and Clerk, etc., et al.,<br><br>　　　Defendants;<br><br>ROB BONTA, as Attorney General, etc.<br><br>　　　Intervener and Respondent. | A163026<br><br>(Alameda County<br>　Super. Ct. No. RG20069607) |

For over 170 years, the California Constitution has directed that "[l]aws shall be made" to exclude "persons convicted of bribery, perjury, forgery, malfeasance in office, or other high crimes" from serving on juries.[1] Until recently, the Legislature followed this directive by excluding from jury

---

[1] Article VII, section 8 of the California Constitution currently provides, "Laws shall be made to exclude persons convicted of bribery, perjury, forgery, malfeasance in office, or other high crimes from office or serving on juries." A similar provision was found in the state constitutions of 1879 and 1849. (See *Helena Rubenstein International v. Younger* (1977) 71 Cal.App.3d 406, 412 and fn. 6 [quoting former article XX, section 11 of the California Constitution of 1879, which provided, " 'Laws shall be made to exclude from office, serving on juries, and from the right of suffrage, persons convicted of bribery, perjury, forgery, malfeasance in office, or other high crimes. . . .' " and "was originally enacted in the 1849 Constitution as article XI, section 18"].)

service persons convicted of *any felony*, unless their civil rights had been restored; former Code of Civil Procedure section 203, subdivision (a) (former section 203(a)), provided in relevant part, "All persons are eligible and qualified to be prospective trial jurors, except" "(5) Persons who have been convicted of malfeasance in office *or a felony*, and whose civil rights have not been restored." (Former § 203(a)(5), as amended by Stats. 1994, ch. 924, § 1, italics added.)[2]

In 2019, the Legislature passed Senate Bill No. 310 (2019–2020 Reg. Sess.) (S.B. 310), which eliminated former section 203(a)(5)'s exclusion of persons convicted of felonies from serving on juries[3] and added new, narrower categories of persons ineligible for jury service. (Stats. 2019, ch. 591, § 1.) Code of Civil Procedure section 203, subdivision (a) (section 203(a)), now excepts from eligibility to serve as jurors "(9) Persons while they are incarcerated in any prison or jail. [¶] (10) Persons who have been convicted of a felony and are currently on parole, postrelease community supervision,

---

[2] Other persons ineligible to serve on juries were and continue to be: "(1) Persons who are not citizens of the United States. [¶] (2) Persons who are less than 18 years of age. [¶] (3) Persons who are not domiciliaries of the State of California . . . . [¶] (4) Persons who are not residents of the jurisdiction wherein they are summoned to serve. [¶] . . . [¶] (6) Persons who are not possessed of sufficient knowledge of the English language, provided that no person shall be deemed incompetent solely because of the loss of sight or hearing in any degree or other disability which impedes the person's ability to communicate or which impairs or interferes with the person's mobility. [¶] (7) Persons who are serving as grand or trial jurors in any court of this state. [¶] (8) Persons who are the subject of conservatorship." (Former § 203(a); Code Civ. Proc., § 203, subd. (a).)

[3] Code of Civil Procedure section 203, subdivision (a)(5), now excludes "Persons who have been convicted of malfeasance in office and whose civil rights have not been restored" and does not refer to persons convicted of a felony.

felony probation, or mandated supervision for the conviction of a felony. [¶] [and] (11) Persons who are currently required to register as a sex offender pursuant to Section 290 of the Penal Code based on a felony conviction." It is the last exclusion that is at issue in this appeal.

Plaintiffs Alliance for Constitutional Sex Offense Laws, Inc. (Alliance), and John Doe filed this action against the clerk of the Alameda County Superior Court alleging S.B. 310's categorical exclusion of current sex offender registrants from jury service denies registrants equal protection under the California Constitution. The trial court sustained a demurrer to the first amended complaint without leave to amend and entered a judgment of dismissal.

Plaintiff John Doe appeals. We have granted the Attorney General's unopposed motion to intervene as a respondent. Keeping in mind the " 'exceedingly deferential' " nature of our inquiry (*In re Murray* (2021) 68 Cal.App.5th 456, 463), we conclude the statutory disparity at issue withstands rational basis scrutiny and there is no denial of equal protection. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We begin with a brief description of a prior lawsuit brought by Alliance in Los Angeles County Superior Court, relevant because the trial court in the present case adopted the analysis and conclusion of the court's order sustaining a demurrer without leave to amend in the prior lawsuit.

*Los Angeles County Lawsuit*

In November 2019, Alliance and individuals John and Jane Doe filed an action in Los Angeles County Superior Court challenging section 203(a)(11)'s exclusion of sex offender registrants from jury service on equal protection grounds. The operative complaint named as defendants the

3

Executive Director/Clerk of the Los Angeles County Superior Court and the Attorney General.

The Attorney General demurred. He argued the plaintiffs failed to state a cause of action because section 203(a)(11) is rationally related to a legitimate state objective and, thus, does not violate equal protection. The Attorney General noted that S.B. 310 excludes from jury service not just current sex offender registrants (§ 203(a)(11)), but also persons who are currently in prison or jail (§ 203(a)(9)) and persons on parole, felony probation, or other mandated supervision for a felony conviction (§ 203(a)(10)). He suggested the Legislature could have rationally determined that, because these groups are "subject to continuing, intrusive monitoring by the authorities," they "are more likely to harbor bias against the State than other felons, and therefore should continue to be excluded from jury service."

On July 15, 2020, the Los Angeles County trial court sustained the demurrer without leave to amend. It accepted the Attorney General's argument that a plausible reason S.B. 310 excluded from jury service persons who are currently incarcerated, persons under mandated supervision for a felony conviction, and persons required to register as sex offenders is that these groups are more likely than persons convicted of felonies generally to harbor bias against the government and the judicial process. Thus, the Los Angeles County court determined, the exclusions of S.B. 310 (§ 203(a)(9)–(11)) serve the legitimate aim of ensuring fair and impartial juries. The court noted that, " 'under the rational relationship test, the state may recognize that different categories or classes of persons within a larger classification may pose varying degrees of risk of harm, and properly may limit a regulation to those classes of persons as to whom the need for regulation is

4

thought to be more crucial or imperative,' " quoting *Warden v. State Bar* (1999) 21 Cal.4th 628, 644 (*Warden*).

The Los Angeles County court was not persuaded by the plaintiffs' argument that the Legislature had rejected the premise that persons convicted of felonies would be biased jurors; the court reviewed the legislative committee reports and found no support for the plaintiffs' argument.[4] The court also observed that whether the Attorney General's proffered rational basis for excluding current sex offender registrants from jury service was the Legislature's true purpose in enacting the bill was irrelevant.

An order of dismissal was filed in September 2020, and the plaintiffs did not appeal in the Los Angeles County case.

*Current lawsuit*

On July 31, 2020, Alliance and an individual identified only as John Doe initiated this action in Alameda County Superior Court naming Chad Finke in his official capacity as Executive Director/Clerk of the Superior Court (Clerk) as the only defendant. Plaintiffs alleged S.B. 310's exclusion of persons required to register as sex offenders from eligibility for jury service denies those persons equal protection of the law and sought a judicial declaration that section 203(a)(11) violates equal protection and an injunction preventing the Clerk from enforcing section 203(a)(11).

The Clerk demurred on the ground plaintiffs' sole claim for relief was barred by the doctrine of res judicata and asked the trial court to take judicial notice of various documents filed in the Los Angeles County lawsuit,

---

[4] The trial court granted the plaintiffs' request for judicial notice of all versions of S.B. 310 introduced in the Legislature during the 2019–2020 regular session, all votes taken by each committee and legislative chamber on S.B. 310, and all analyses and committee reports provided to the Legislature regarding S.B. 310.

5

including the first amended complaint, demurrer papers filed by the Attorney General, and the order sustaining the demurrer.[5] The trial court granted the request for judicial notice and sustained the demurrer with leave to amend.

In March 2021, plaintiff John Doe alone filed a first amended complaint against the Clerk and the Judicial Council of California. The next month, defendants filed a demurrer. They argued plaintiff failed to state a claim for the reasons articulated by the Los Angeles County Superior Court in the identical prior action and plaintiff's claim was barred by the doctrine of claim preclusion.

The trial court sustained the demurrer without leave to amend. The court considered the merits of the equal protection argument, stating that it "conducted its own analysis" and then "adopt[ed] the analysis and conclusion" of the ruling of July 15, 2020, in the Los Angeles County lawsuit.

## DISCUSSION

A.    *Standard of Review*

An equal protection claim may be addressed by demurrer. (E.g., *Kimco Staffing Services, Inc. v. State of California* (2015) 236 Cal.App.4th 875, 877–878 (*Kimco*) [affirming judgment of dismissal after the trial court sustained a demurrer without leave to amend to an equal protection challenge to a newly enacted law]; *Jensen v. Franchise Tax Bd.* (2009) 178 Cal.App.4th 426, 432, 442 [equal protection challenge to a newly enacted voter initiative].)

Our review is de novo; we exercise independent judgment in determining whether plaintiff stated a cause of action as a matter of law.

---

[5] The Clerk did not argue the merits of plaintiffs' claim, stating he was "a neutral court executive officer who must follow the law as specified by the Legislature and courts, but does not advocate the issue of the law's constitutionality."

6

(*Kimco*, *supra*, 236 Cal.App.4th at p. 884.) " ' " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' " ' " (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433 (*Walgreen*).)

Here, plaintiff argues the trial court applied the wrong standard in deciding the demurrer. But we review the ruling, not the trial court's rationale. (*Walgreen*, *supra*, 185 Cal.App.4th at p. 433.) " 'We affirm if any ground offered in support of the demurrer was well taken but find error if the plaintiff has stated a cause of action under any possible legal theory.' " (*Ibid.*)

In considering a claim that a statute is unconstitutional, we begin with the premise that the law is presumed valid, and we "resolv[e] all doubts in favor of the Legislature's action." (*Wilson v. State Bd. of Education* (1999) 75 Cal.App.4th 1125, 1134.) That a statute is unconstitutional must be clearly shown. (*California Renters Legal Advocacy & Education Fund v. City of San Mateo* (2021) 68 Cal.App.5th 820, 837.)

B.      *Equal Protection*

Under the California Constitution, "[a] person may not be . . . denied equal protection of the laws." (Cal. Const., art. I, § 7.)[6] " 'The right to equal protection of the law is violated when "the government . . . treat[s] a [similarly situated] group of people unequally without some justification." ' " (*In re Murray*, *supra*, 68 Cal.App.5th at p. 462.)

---

[6] While the United States Constitution also prohibits the state from denying equal protection of the laws (U.S. Const., 14th Amend.), plaintiff in this case alleges violation of the California Constitution only.

1.      Rational Basis Review

The first issue we must address is which standard we apply in our equal protection analysis.  Rational basis review applies when the challenged statute implicates no suspect class or fundamental right; in such cases, " 'equal protection of the law is denied only where there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." ' " (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881 (*Johnson*).)[7]

Plaintiff does not dispute that S.B. 310 is subject to rational basis review.  Serving as a juror is not a fundamental right, and persons required to register as sex offenders are not a suspect class for purposes of constitutional equal protection analysis.  (*Rubio v. Superior Court* (1979) 24 Cal.3d 93, 102 (*Rubio*) ["jury duty is not a 'fundamental right' and any restriction thereof is to be judged by the rational relationship standard"]; *Johnson, supra,* 60 Cal.4th at p. 881 [equal protection claim regarding differing sex offender registration rules for different sex offenses "implicates no suspect class"]; *Legg v. Department of Justice* (2022) 81 Cal.App.5th 504, 511 ["sex offender registration does not implicate a suspect class"].)

Rational basis review " 'is the basic and conventional standard for reviewing economic and social welfare legislation in which there is a "discrimination" or differentiation of treatment between classes or individuals.  It manifests restraint by the judiciary in relation to the discretionary act of a co-equal branch of government; in so doing it invests

---

[7] In contrast, " 'strict scrutiny' " review applies in cases involving suspect classifications or fundamental rights.  Under that standard, " ' "the *state* bears the burden of establishing not only that it has a *compelling* interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose." ' " (*Warden*, *supra*, 21 Cal.4th at p. 641.)

8

legislation involving such differentiated treatment with a presumption of constitutionality and "requir[es] merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose." ' " (*Warden*, *supra*, 21 Cal.4th at p. 641.) "So long as the challenged distinction 'bear[s] some rational relationship to a conceivable legitimate state purpose' [citations], it will pass muster; once we identify ' " 'plausible reasons' for [the classification] 'our inquiry is at an end.' " ' " (*California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 209 (*California Grocers*).)

Rational basis review is highly deferential. "When conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made. A classification is not arbitrary or irrational simply because there is an 'imperfect fit between means and ends.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 77.) Further, the " 'standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in " 'rational speculation' " as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review "whether or not" any such speculation has "a foundation in the record." ' [Citation.] To mount a successful rational basis challenge, a party must ' "negative every conceivable basis" ' that might support the disputed statutory disparity. [Citations.] If a plausible basis exists for the disparity, courts may not second-guess its ' "wisdom, fairness, or logic." ' " (*Johnson*, *supra*, 60 Cal.4th at p. 881.)

9

2.    Analysis

Plaintiff argues excluding sex offender registrants from jury service undermines the purposes of S.B. 310, which he asserts are to achieve representative juror pools, protect the integrity of the jury system, and reintegrate persons with felony convictions into the community, citing various committee reports on the bill.[8]

The Attorney General responds that section 203(a)(11) passes constitutional muster because the Legislature could have rationally determined that "felony sex offender registrants, and other felons who are subject to continuing, intrusive, post-conviction monitoring by law enforcement authorities, pose a greater risk of bias against the state and the

---

[8] For example, a legislative committee report on S.B. 310 stated that the bill would make "modest yet vitally important reforms to the existing process for generating lists of potential jurors" by, among other things, eliminating "the categorical prohibition on former felons serving on juries." (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 310 (2019–2020 Reg. Sess.) as amended May 17, 2019, p. 1.) Supporters of the bill argued it "represents another step in California's ongoing efforts to enact criminal justice reform and ensure fair and equitable access to state courts." (*Ibid*.) The author of the bill commented that S.B. 310 would "promote fairness and legitimacy in California's jury system by ensuring a more accurate cross section of the community by . . . allowing a person with a prior felony conviction to serve on a jury as long as they are not currently incarcerated." (*Id*. at pp. 3–4.) (Initially, S.B. 310 did not list either persons on parole and felony probation or current sex offender registrants as persons ineligible for jury service. (See S.B. 310, as amended in Sen. Mar. 21, 2019.)) The committee report further noted that, despite "recent efforts to reform the criminal justice system, one in three African American men will be convicted of a felony at some point in their lives," and "it would appear that categorically denying over thirty percent of a demographic group the ability to serve on a jury significantly limits a litigant from that group the ability to try a case before a jury of their peers and disproportionately excludes that segment of the population from the vital democratic institution of jury service." (*Id*. at p. 5.)

machinery of law enforcement" than persons with felony convictions generally and, therefore, their exclusion from juror eligibility rationally serves the legitimate state goal of ensuring impartial jury verdicts. He cites the California Supreme Court's decision in *Rubio*, *supra*, 24 Cal.3d 93, as support for his position.

In *Rubio*, a criminal defendant argued former section 203(a)(5)'s blanket exclusion of all persons convicted of felonies from jury service violated the equal protection clauses of the state and federal constitutions. (*Rubio*, *supra*, 24 Cal.3d at p. 101.) Applying rational basis review, our high court concluded that an objective of the former law was "to protect the right to trial by an impartial jury" and the exclusion of persons with felony convictions bore a rational relationship to that objective. (*Ibid.*)

The *Rubio* court reasoned: "The Legislature could reasonably determine that a person who has suffered the most severe form of condemnation that can be inflicted by the state—a conviction of felony and punishment therefor—might well harbor a continuing resentment against 'the system' that punished him and an equally unthinking bias in favor of the defendant on trial, who is seen as a fellow underdog caught in its toils. Because these antisocial feelings would often be consciously or subconsciously concealed, the Legislature could further conclude that the risk of such prejudice infecting the trial outweighs the possibility of detecting it in jury selection proceedings. The exclusion of ex-felons from jury service thus promotes the legitimate state goal of assuring impartiality of the verdict." (*Rubio*, *supra*, 24 Cal.3d at p. 101.)

Our high court rejected the defendant's arguments that former section 203(a)(5)'s exclusion of all persons with felony convictions from jury service was "not necessary to protect the integrity of the jury system" and that it was

11

overinclusive because it "bars from service some ex-felons who would not in fact be biased jurors." (*Rubio, supra,* 24 Cal.3d at pp. 101–102.) The court explained that, under rational basis review, "the exclusion of ex-felons is a permissible legislative response to the problem of juror bias *even though it is arguably imprecise*," and noted, "We do not, of course, weigh the wisdom of this legislation. (*Id.* at p. 102, italics added.)[9]

Given our Supreme Court's reasoning in *Rubio,* we conclude the Legislature similarly could determine that a person who has been convicted of a felony sex offense and is currently required to register as a sex offender might harbor a continuing resentment and bias against the system that has imposed the ongoing registration requirement, which subjects the person to " 'continued public surveillance' " (*Johnson,* 60 Cal.4th at p. 877). This determination, in turn, provides a constitutionally permissible plausible reason for excluding current sex offender registrants from jury service to promote the legitimate state goal of assuring impartial juries, even if the exclusion is arguably imprecise.

Plaintiff asserts S.B. 310 singles out current sex offender registrants for different treatment from "all other felons." As we have seen, however, this is not correct; persons currently incarcerated in prison or jail and persons with felony convictions who are currently on parole, felony probation, or other mandated supervision are also excluded from jury service under S.B.

---

[9] According to a committee report on S.B. 310, "forty-nine states, the District of Columbia, and the federal government, have some type of restriction on a convicted felon's eligibility for jury service." (Sen. Com. on Pub. Safety, Rep. on Sen. Bill No. 310 (2019–2020 Reg. Sess.) as amended March 21, 2019, p. 4, citing Binnall, *Summonsing Criminal Distance: Convicted Felons' Perspective on Jury Service* (2017) 43 Law and Social Inquiry 4.) Maine is the only state that "allows felons to serve on a jury without restrictions." (*Ibid.*)

310. Acknowledging this fact, plaintiff responds that sex offender registrants are not equivalent to persons on probation or parole. But equivalence is not necessary; it is enough that the Legislature reasonably could be concerned that these groups (persons in prison or jail, persons on parole, felony probation or other mandated supervision, and persons currently required to register as sex offenders) are more likely to harbor bias than persons convicted of felonies generally on account of their *ongoing* supervision and legal obligations.[10] Under "rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made." (*People v. Turnage, supra*, 55 Cal.4th at p. 77.)

Plaintiff's attempt to negative this conceivable basis for the statutory disparity is unavailing. He argues the legislative history of S.B. 310 shows "the Legislature rejected the assumption that persons with criminal justice involvement are biased jurors incapable of being appropriately screened through the voir dire process."[11] But even assuming the Legislature rejected

---

[10] Section 203(a)(11) excludes only those persons convicted of felony sex offenses who are *currently* required to register as sex offenders, not all persons convicted of felony sex offenses. (§ 203(a)(11).) As the Attorney General points out, in 2017, the Legislature passed, and the Governor signed, Senate Bill No. 384 (2017-2018 Reg. Sess.), which established a three-tiered scheme for sex offender registration. (Stats. 2017, ch. 541, § 2; *Legg v. Department of Justice, supra*, 81 Cal.App.5th at p. 509.) Persons convicted of registrable sex offenses are now required to register for a minimum of 10 years (tier one), 20 years (tier two), or life (tier three) depending on the offenses committed and subsequent criminal conduct. (See generally Pen. Code, § 290, subd. (d).) Thus, a person convicted of a registrable felony sex offense who is no longer required to register as a sex offender (and who is not incarcerated or subject to mandated supervision for a felony conviction) is eligible to serve as a juror under S.B. 310.

[11] One legislative committee report on S.B. 310 noted that opponents of the bill (including the California District Attorneys Association and law

13

the premise that risk of bias is reason to categorically exclude *all* persons convicted of felonies from jury service, this does not foreclose the possibility that the Legislature was concerned about bias within subsets of the group. Under rational basis review, "the state may recognize that different categories or classes of persons within a larger classification may pose varying degrees of risk of harm, and properly may limit a regulation to those classes of persons as to whom the need for regulation is thought to be more crucial or imperative." (*Warden, supra*, 21 Cal.4th at pp. 644–645.) As the Attorney General argues, it would be rational for the Legislature to determine that a categorical ban is not warranted, but that certain categories of persons convicted of felonies, including current sex offender registrants, persons on parole or probation, and persons in prison or jail, pose a risk of bias due to their continuing involvement with law enforcement such that their exclusion from jury service is still warranted.

Plaintiff emphasizes that early versions of S.B. 310 proposed removing section 203(a)(5)'s blanket exclusion from jury service of persons convicted of felonies and said nothing about current sex offender registrants (or persons on parole or probation). (See S.B. 310, as amended in Sen. Mar. 21, 2019.) (Early versions of S.B. 310 did propose excluding persons while they are

---

enforcement representatives) argued permitting persons convicted of felonies to serve on juries "will introduce significant anti-government bias into the courts," but "[e]mpirical research undermines justifications for excluding those convicted of a felony from serving." (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 310 (2019–2020 Reg. Sess.) as amended May 17, 2019, pp. 2, 7.) The report cited "one study [which] found that 'felon jury exclusion' is 'an imprecise and perhaps unnecessary practice that may come at substantial costs.'" (*Id.* at p. 7.) The report further stated, "[A]nti-government biases may exist in any potential juror, and there is little evidence to suggest the existing voir dire process is not adequately identifying and removing these jurors." (*Ibid.*)

incarcerated.)  He notes the exclusion of registrants (and persons on parole or probation) was added late in the legislative process "without any analysis or discussion in the legislative history" (see S.B. 310, as amended in Assem. Aug. 26, 2019) and suggests the absence of explanation for the late amendments to the bill somehow demonstrates that concern about potential juror bias could not have been the reason.

But in rational basis review, it is not appropriate to find an equal protection violation by relying on "the absence of evidence in either the legislative history or in the court record to indicate that the proffered justifications . . . were the actual motivation for the adoption of the [exclusions]." (*Warden, supra*, 21 Cal.4th at p. 650.)  This is because " 'a legislative choice is not subject to courtroom factfinding and may be based on rational speculation *unsupported by evidence or empirical data.*' "  (*Ibid.*, quoting *F.C.C. v. Beach Communications, Inc.* (1993) 508 U.S. 307, 315.)

Moreover, "the decision how broadly and in what manner to attack perceived problems is for the elected branches in the first instance." (*California Grocers, supra*, 52 Cal.4th at p. 209.)  "Such line-drawing is the province of legislative bodies, and 'the precise coordinates of the resulting legislative judgment [are] virtually unreviewable, since the [L]egislature must be allowed leeway to approach a perceived problem incrementally.' " (*Id.* at p. 210.)  We cannot say the lines the Legislature chose to draw in crafting S.B. 310 are irrational.  (See *City & County of San Francisco v. Flying Dutchman Park* (2004) 122 Cal.App.4th 74, 83 [a reviewing court will not overturn a law " ' "unless the varying treatment of different groups . . . is so unrelated to the achievement of any combination of legitimate purposes" ' " that it can only be concluded the government's action is " ' "irrational" ' "].)

15

Rational basis review "sets a high bar before a law is deemed to lack even the minimal rationality necessary for it to survive constitutional scrutiny. Coupled with a rebuttable presumption that legislation is constitutional, this high bar helps ensure that democratically enacted laws are not invalidated merely based on a court's cursory conclusion that a statute's tradeoffs seem unwise or unfair." (*People v. Chatman* (2018) 4 Cal.5th 277, 289.) Plaintiff cannot meet this high bar. We have identified a plausible reason for the Legislature's line-drawing in S.B. 310: expanding the jury pool to include many persons convicted of felonies while at the same time ensuring impartial juries by excluding those persons convicted of felonies deemed more likely to harbor anti-government bias. Consequently, our inquiry is at an end. (*California Grocers*, *supra*, 52 Cal.4th at p. 209.)

Plaintiff has not and cannot allege the difference in treatment between persons in prison or jail, persons on parole, probation or mandated supervision for a felony conviction, and sex offender registrants on the one hand and persons convicted of felonies who are not subject to continuing monitoring on the other hand lacks a rational basis. Accordingly, we affirm the judgment of dismissal.

## DISPOSITION

The judgment of dismissal is affirmed.

16

 

                                _____

                                Miller, J.

WE CONCUR:

_____

Richman, Acting P.J.

_____

Van Aken, J.*

A163026, *Doe v. Finke, et al.*

---

     * Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Court: Alameda County Superior Court

Trial Judge: Hon. Jeffrey Brand

Law Office of Janice M. Bellucci, Janice M. Bellucci for Plaintiff and Appellant

Reed Smith LLP, Raymond A. Cardozo, for Defendants

Rob Bonta, Attorney General; Thomas S. Patterson, Assistant Attorney General; Paul Stein, S. Clinton Woods, Deputy Attorneys General, for Intervener and Respondent

A163026, *Doe v. Finke, et al.*